TAYLOR, J.
This Court is once again called on to decide if the state has met its constitutional mandate to adequately fund public education. Plaintiffs are taxpayers and school districts seeking a declaratory judgment that the state failed to meet its funding responsibility mandated by Const 1963, art 9, § 29, a section of our Constitution that is commonly known as the “Headlee Amendment.” The complaint asserts that the state did not provide funding to school districts in Michigan for the necessary increased costs of providing activities and services that are new or mandated at an increased level since December 23, 1978. The Court of Appeals found that claims plaintiffs did raise or could have raised in earlier suits were barred pursuant to the doctrine of res judicata.[1] As to those issues that were not subject to res judicata analysis, the Court of Appeals held that they were otherwise barred because of releases the parties executed or the activities[2] were not new or were not *110 increased activities within the meaning of Const 1963, art 9, § 29. We affirm in part, reverse in part, and remand.
I. CONSTITUTIONAL PROVISIONS
Under Michigan’s Headlee Amendment,[3] as of 1978, the state is forbidden from reducing funding levels for the necessary costs of existing activities or services mandated by the Legislature, and is to completely fund the necessary costs of new or increased activities or services mandated by the Legislature:
The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law. A new activity or service or an increase in the [level] of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs. The provision of this section shall not apply to costs incurred pursuant to Article VI, Section 18. [Const 1963, art 9, § 29.]
These two different provisions in art 9, § 29 have been described by this Court as follows:
The first sentence of this provision prohibits reduction of the state proportion of necessary costs with respect to the continuation of state-mandated activities or services. The second sentence requires the state to fund any additional necessary costs of newly mandated activities or services and increases in the level of such activities or services from the 1978 base year. [Judicial Attorneys Ass’n v Michigan, 460 Mich 590, 595; 597 NW2d 113 (1999), quoting 228 Mich App 386, 396; 597 NW2d 378 (1998).]
*111 To assist the public in understanding the different thrusts of these two sentences, this Court has described the first sentence as a “maintenance of support” (MOS) provision and the second sentence as a “prohibition on unfunded mandates” (POUM) provision. See id. Accordingly, to establish a Headlee violation under the MOS clause, the plaintiffs must show “(1) that there is a continuing state mandate, (2) that the state actually funded the mandated activity at a certain proportion of necessary costs in the base year of 1978-1979, and (3) that the state funding of necessary costs has dipped below that proportion in a succeeding year.” Oakland Co v Michigan, 456 Mich 144, 151; 566 NW2d 616 (1997) (opinion by KELLY, J.). Under the POUM clause, they must show that the state-mandated local activity was originated without sufficient state funding after the Headlee Amendment was adopted or, if properly funded initially, that the mandated local role was increased by the state without state funding for the necessary increased costs.
However, not all activity changes established pursuant to statute or rule constitute “new or increased” activity requiring state funding. MCL 21.234(5) explains what the POUM provision excludes:
(a) A requirement imposed on a local unit of government by a state statute or an amendment to the state constitution of 1963 adopted pursuant to an initiative petition, or by a state law or rule enacted or promulgated to implement such a statute or constitutional amendment.
(b) A requirement imposed on a local unit of government by a state statute or an amendment to the state constitution of 1963, enacted or adopted pursuant to a proposal placed on the ballot by the legislature, and approved by the voters, or by a state law or rule enacted or promulgated to implement such a statute or constitutional amendment.
*112 (c) A court requirement.
(d) A due process requirement.
(e) A federal requirement.
(f) An implied federal requirement.
(g) A requirement of a state law which applies to a larger class of persons or corporations and does not apply principally or exclusively to a local unit or units of government.
(h) A requirement of a state law which does not require a local unit of government to perform an activity or service but allows a local unit of government to do so as an option, and by opting to perform such an activity or service, the local unit of government shall comply with certain minimum standards, requirements, or guidelines.
(i) A requirement of a state law which changes the level of requirements, standards, or guidelines of an activity or service that is not required of a local unit of government by existing law or state law, but that is provided at the option of the local unit of government.
(j) A requirement of a state law enacted pursuant to section 18 of article 6 of the state constitution of 1963.
Thus, under a POUM analysis, not every required change in school activities requires state funding under the Headlee Amendment. Judicial Attorneys Ass’n, supra at 603. Headlee, at its core, is intended to prevent attempts by the Legislature “to shift responsibility for services to the local government... in order to save the money it would have had to use to provide the services itself.” Id. at 602-603.
Taxpayers alleging a violation of the Headlee Amendment may file a request for declaratory relief in the Court of Appeals under Const 1963, art 9, § 32.[4] In this case, plaintiffs have brought suit under art 9, § 32, *113 alleging that the Legislature violated the second provision of art 9, § 29 by requiring new activities and increases in existing activities without providing sufficient additional funding. Because of the extensive history of similar litigation between these parties, a brief review of the earlier suits is required.
II. HISTORY
Many of these plaintiffs have brought allegations of underfunding against these defendants in earlier suits. In 1980, the first of these suits was filed; it was not resolved until seventeen years later. Durant v Michigan, 456 Mich 175; 566 NW2d 272 (1997) (Durant I). Chiefly at issue in Durant I was a reduction in state funding for special education activities. Ultimately, this Court not only granted declaratory relief for the plaintiffs, but also, in an award that deeply divided the Court on the issue of the Court’s authority, awarded money damages. In this case, there is no claim for damages and we need not revisit the issue of the propriety of a damages award, but would note that even the proponents of money damages in Durant I described it as “atypical” and predicated the claim for the award on the prolonged duration of Durant I. Subsequently, the Legislature, perhaps taken aback by the monetary damages award, undertook to work statewide equity by making available similar relief to those local and intermediate school districts that were not plaintiffs in Durant I. As the legislation described it, it was to be in “settlement and compromise of any claim or claims that were or could have been asserted by these districts and intermediate districts” in the Durant I litigation. MCL 388.1611f(l), (2), (4). To receive the settlement funds, *114 however, a school district had to provide the State Treasurer with a board resolution
waiving any right or interest the district or intermediate district has or may have in any claim or litigation based on or arising out of any claim or potential claim through September 3, 1997 that is or was similar to the claims asserted by the plaintiffs in the consolidated cases known as Durant v State of Michigan. [MCL 388.1611f(l). Similarly, see MCL 388.1611f(2).]
Three hundred eighty-two of the local and intermediate school districts named as plaintiffs in the instant suit adopted the statutorily prescribed resolution, timely sent the executed resolutions to the State Treasurer, and received settlement payments.[5]
Several months later, in 1998, plaintiffs taxpayers and school districts brought a second suit, alleging that the system the state used for distributing funds resulted in an underfunding of the schools for the years 1997-1998 through 2000-2001 in violation of the Head-lee Amendment. Durant v Michigan (On Remand), 238 Mich App 185; 605 NW2d 66 (1999) (Durant II). The Court of Appeals granted declaratory relief largely in the plaintiffs’ favor. This Court denied leave on the substantive issues of the case. 462 Mich 882 (2000).
A year later, similar plaintiffs returned to file two suits. In the first, Durant v Michigan, 251 Mich App 297; 650 NW2d 380 (2002) (Durant III), the plaintiffs alleged that 2000 PA 297, which had been enacted in response to Durant II to cure the deficiencies the Court had found in the State School Aid Act, MCL 388.1601 et seq., was unconstitutional. However, the Court of Appeals found this system was constitutional, and this Court *115 denied leave. 467 Mich 900 (2002). The second lawsuit, which is the subject of this appeal, was similar to Durant I except, unlike Durant I, which focused on the first sentence of art 9, § 29, the MOS clause, this action focused on the second sentence, the POUM clause. Thus, plaintiffs claim that the state did not provide sufficient funding for activities that were new or were mandated to be provided at increased levels, causing a Headlee-prohibited unfunded mandate.
Specifically, plaintiffs alleged in count I that, through seven administrative rules,[6] the state mandated that the school districts provide a variety of new special education activities and services[7] and then failed to fund those activities. In count II, they alleged that, pursuant to MCL 380.1284, school districts were required to increase annually the hours of pupil instruction without increased state funding.[8] Count III alleged that, through twelve statutes[9] and Executive Order No. 2000-9, the state mandated local districts to provide activities and services not required in 1978,[10] again without providing funding.
*116 Defendants moved for summary disposition of all counts pursuant to MCR 2.116(C)(7) (claim barred as a matter of law) and C(8) (failure to state a claim on which relief can be granted), as well as summary disposition of count I pursuant to C(10) (no genuine issue of material fact).
Defendants argued chiefly that, under C(7), plaintiffs were barred by the doctrine of res judicata because of the Durant I litigation and by release and waiver because of the statutorily required release they had executed pursuant to the Legislature’s post -Durant I enactment, MCL 388.1611f. Defendants further argued that the claims failed either as a matter of law under C(8) or as a matter of fact under C(10) because plaintiffs *117 did not sufficiently allege the type or the extent of the necessary increased costs of new activities. See Oakland Co, 456 Mich 166.
Plaintiffs responded that res judicata did not apply because Durant I resolved only issues relating to the first sentence of art 9, § 29, whereas this action concerns the second sentence. Furthermore, they asserted that res judicata was inapplicable because the relief they sought was prospective and covered a different period than that covered by Durant I. With regard to those plaintiffs who signed the statutory release, they claimed they should not have lesser rights than the actual litigants and that furthermore the release permits claims arising after the release date. Regarding the C(10) factual issues, plaintiffs asserted that their proofs would show sufficient factual support for their claims.
The Court of Appeals majority ruled for defendants on all counts. 250 Mich App 715. It found that, under MCR 2.116(C)(7), all the plaintiffs who were also plaintiffs in Durant I were barred by res judicata because the present claims, except for one activity alleged in count III, could have been raised in the earlier suit. 250 Mich App 706. Reinforcing this point, the Court found that because some plaintiffs had raised POUM claims, all plaintiffs were barred because those raising POUM issues effectively represented the interests of the others. The majority also found that the districts that had signed releases were similarly barred under C(7) because the release expressly applied to “any claim or potential claim .. . similar to the claims asserted by the plaintiffs in [.Durant 7],” and the alleged underfunding predated the releases. 250 Mich App 708, 710. Thus, the majority reasoned, these plaintiffs had no more rights than the parties who had actually litigated Durant I, and all *118 claims, with the one exception discussed below, were disposed of pursuant to MCR 2.116(C)(7).
The remaining claim, that the record-keeping requirements found in MCL 388.1752 and EO 2000-9 imposed a new or increased mandate, was found by the Court of Appeals not to violate the Headlee Amendment. The majority concluded that these requirements predated Durant I and thus could have been raised in Durant I. In considering MCL 388.1752, it pointed out that the obligations imposed by the statute already existed in 1978. Further, any later amendments of the statute simply renumbered it[11] and defined the scope of the obligation.[12] 250 Mich App 712. Accordingly, it was the Court’s view that the amendment did not violate Headlee because “[cjlarifying nonsubstantive changes in an earlier, existing state law does not constitute a new activity or service or increase in the level of an existing activity or service. MCL 21.233(7).” Id. With regard to EO 2000-9 and its standards for uniform reporting of information, the majority found that they were merely designed to streamline a process that had existed before Headlee and thus did not mandate new activity. 250 Mich App 713-714, citing Judicial Attorneys Ass’n, supra at 605. Therefore, with regard to these record-keeping requirement issues, the Court granted defendants’ motion for summary disposition pursuant to MCR 2.116(C)(10).
Reinforcing this last holding, the Court of Appeals noted that the record-keeping activities were administrative functions that “constitute the essence of the state’s constitutional obligation to ‘maintain and support a system of free public education and secondary *119 schools ...Const 1963, art 8, § 2,” and accordingly fell outside the restrictions of the Headlee Amendment. 250 Mich App 714.
Plaintiffs sought leave to appeal to this Court, raising the same arguments they brought in the Court of Appeals to challenge defendants’ motion for summary disposition. We granted leave. 467 Mich 919 (2002).
III. STANDARD of review
The question whether res judicata bars a subsequent action is reviewed de novo by this Court. Pierson Sand & Gravel, Inc v Keller Brass Co, 460 Mich 372, 379; 596 NW2d 153 (1999). Whether the Court of Appeals properly determined that release barred those plaintiffs pursuant to MCR 2.116(C)(7) is likewise reviewed de novo. Maskery v Univ of Michigan Bd of Regents, 468 Mich 609, 613; 664 NW2d 165 (2003).
We also review de novo the Court’s decision to grant or deny summary disposition. Maiden v Rozwood, 461 Mich 109, 118; 597 NW2d 817 (1999). “A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant.” Maiden, supra at 119. The motion “may be granted only where the claims alleged are ‘so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.’ ” Id. (citation omitted). We discussed this pleading requirement as it pertains to Headlee claims in Oakland Co, supra at 166 (opinion by KELLY, J.):
Under Durant [7], future plaintiffs must allege the type and extent of the harm so that the court may determine if a § 29 violation occurred for purposes of making a declara *120 tory judgment. In that way, the state will be aware of the financial adjustment necessary to allow for future compliance.[13]
In a C(10) motion, testing the factual sufficiency of the complaint, we consider “the substantively admissible evidence actually proffered in opposition to the motion.” Maiden, supra at 121. Thus, when such a motion is properly brought, the nonmovant must, under MCR 2.116(G)(3)(b) and 2.116(G)(4), produce admissible support for its opposition in order to defeat the motion.
IV ANALYSIS
A. RES JUDICATA
In discussing res judicata in the context of a Headlee claim, it is important to begin by asking how the constitutional ratifiers of Headlee, the citizens of Michigan, would have envisioned the handling of repeated relitigation of the same issue. We ask this because it is their understanding that must control. As we have observed many times:
A constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it. “For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and *121 ratified the instrument in the belief that that was the sense designed to be conveyed.” [American Axle & Mfg, Inc, v Hamtramck, 461 Mich 352, 363; 604 NW2d 330 (2000), quoting 1 Cooley, Constitutional Limitations (8th ed), p 143.]
We consider it apparent that the people would have thought, as with all litigation, there would be the traditional rules that would preclude relitigation of similar issues by similar parties: that is, the area of law we describe formally as encompassed by the doctrine of res judicata. We must then consider res judicata and apply it to this unique Headlee situation.
The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. Sewell v Clean Cut Mgt, Inc, 463 Mich 569, 575; 621 NW2d 222 (2001). This Court has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. Dart v Dart, 460 Mich 573, 586; 597 NW2d 82 (1999).
Examining the Sewell factors, we note that it is uncontested that Durant I was decided on its merits. In Durant I we resolved the question of the state’s ability under Headlee to reduce funding, in the circumstances there presented, for existing programs.
With respect to the second res judicata requirement, that the parties in the later suit be the same or be those in privity with them, plaintiffs acknowledge that there is some overlap among the school districts, but assert it *122 is not complete and the individual taxpayers are also not identical. This defense implicates the scope of the concept of “privity.”
To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert. Baraga Co v State Tax Comm, 466 Mich 264, 269-270; 645 NW2d 13 (2002). The outer limit of the doctrine traditionally requires both a “substantial identity of interests” and a “working functional relationship” in which the interests of the nonparty are presented and protected by the party in the litigation. Id., quoting Baraga Co v State Tax Comm, 243 Mich App 452, 456; 622 NW2d 109 (2000), citing Phinisee v Rogers, 229 Mich App 547, 553-554; 582 NW2d 852 (1998). In litigation concerning the MOS or POUM provisions of the Headlee Amendment, Const 1963, art 9, § 29, where a taxpayer or a local unit of government is suing the state, the issue is whether the Legislature’s act is unconstitutional as it applies not just to a single local unit of government, but to all local units affected by the legislation. In such cases, the interests of all similar local units of government and taxpayers will almost always be identical. If the relief sought by one plaintiff to remedy a challenged action is indistinguishable from that sought by another, such as when declaratory relief is sought concerning an act of the Legislature establishing the proportion of state funding for local government units, the interests are identical.
Thus, for the purposes of the second Sewell factor, a perfect identity of the parties is not required, only a “substantial identity of interests” that are adequately presented and protected by the first litigant. We find that the interests of the current plaintiffs were, for Headlee purposes, adequately represented by the plain *123 tiffs in Durant 7. The taxpayer parties all have the same interest: that mandated activities are funded as they are required to be under the Headlee Amendment. These interests were presented and protected by the extensive and thorough litigation that occurred in Durant 7.[14] Thus, we find the current taxpayer plaintiffs are in privity with the Durant I plaintiffs.[15]
We find the school districts, again for Headlee purposes, also have the same legal interest protected by the Durant I plaintiffs and are similarly in privity. In this case, particularly because only declaratory relief, not damages, was sought, it is evident that all school districts have the same interest.
Finally, concerning the last element of res judicata, we must decide whether the matter in the second case was or could have been resolved in the first. Res judicata bars every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. Sewell, supra at 575-576. This Court has noted that “[r]es judicata bars a subsequent action between the same parties when the evidence or essential facts are identical.” Dart, supra at 586. This statement refers to what is generally called *124 the “same evidence” test. Because there appears to be some confusion regarding the relationship between the “same transaction” test and the “same evidence” test, we take this opportunity to provide clarification.
The “same transaction” test and the “same evidence” test are alternative approaches used in determining the applicability of res judicata. As stated by the Illinois Supreme Court in River Park, Inc v Highland Park, 184 111 2d 290, 307-309; 703 NE2d 883 (1998) (citations omitted):
Under the “same evidence” test, a second suit is barred “if the evidence needed to sustain the second suit would have sustained the first, or if the same facts were essential to maintain both actions.” The “transactional” test provides that “the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief.”
[UJnder the same evidence test the definition of what constitutes a cause of action is narrower than under the transactional test. As explained in the Restatement (Second) of Judgments, the same evidence test is tied to the theories of relief asserted by a plaintiff, the result of which is that two claims may be part of the same transaction, yet be considered separate causes of action because the evidence needed to support the theories on which they are based differs. By contrast, the transactional approach is more pragmatic. Under this approach, a claim is viewed in “factual terms” and considered “coterminous with the transaction, regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; * * * and regardless of the variations in the evidence needed to support the theories or rights.”
Because this Court has accepted the validity of the broader transactional test in Michigan, we need not *125 consider as dispositive plaintiffs’ assertions that the evidence needed to prove this case is different than was needed in Durant I. Although that fact may have some relevance, the determinative question is whether the claims in the instant case arose as part of the same transaction as did the claims in Durant I. “Whether a factual grouping constitutes a ‘transaction’ for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation, [and] whether they form a convenient trial unit... 46 Am Jur 2d, Judgments § 533, p 801 (emphasis added).
With the limited exception of several count III claims discussed below, the statutory and regulatory requirements complained of in this case, and alleged to be “new” or “increased” activities since Headlee was enacted, existed during the pendency of Durant I. Moreover, the requirements, like those in Durant I, have been imposed by the Legislature and executive bodies on local school districts for the purpose of providing public education. Thus, they are related to one another in “time, space [and] origin.” Further, because the allegations in both this case and Durant I concern the Headlee Amendment, the claims are related by “motivation” as well. As pleaded, we find no indication that plaintiffs, with due diligence, could not have asserted these claims during the pendency of Durant I. Indeed, some of the claims in this case were actually claimed in Durant I.[16]
*126 Therefore, with the several count III exceptions discussed below, we agree with the Court of Appeals that plaintiffs’ claims in this case arose from the same transactions as did the Durant I claims and that plaintiffs, exercising due diligence, could have filed them during the pendency of Durant I.[17] Thus, plaintiffs’ claims are barred by res judicata.
Moreover, we note that, were this Court to adopt the approach of Justice Kelly’s dissent, which essentially removes Headlee declaratory judgment actions from the general rules of res judicata, we would be subjecting the state to litigate and relitigate a potentially endless barrage of repetitive claims with only the plaintiffs changing.[18] Justice KELLY would address this problem using stare decisis rather than res judicata. While she does not explain how this would work,[19] we deduce that she prefers an outcome where only those issues actually litigated would be barred, because stare decisis would not apply to claims that could have been brought in the first suit, but were not. See Brown v Manistee Co Rd Comm, 452 Mich 354, 365-366; 550 NW2d 215 (1996). Her approach using stare decisis would allow each *127 individual taxpayer in the state a chance to bring a separate suit alleging similar, but not identical, claims. It is, in short, an invitation to a total paralysis of government, both state and local, as it would deprive state and local officials, as well as citizens, of the ability to know with finality what the law is. Such an approach would surely bring the Headlee protections into disrepute and thus jeopardize them. We decline to convert Headlee into such a Frankensteinian monster because we see nothing in the Headlee Amendment that suggests to us that the people, in passing the Amendment, also planned to effectively sabotage it by disregarding well-established rules of res judicata that could make it workable.
B. RELEASE AND WAIVER
In enacting MCL 388.161If, the Legislature created a contract and a release with the local units of government. The release states that the school district
waives any right or interest it may have in any claim or potential claim through September 30,1997 relating to the amount of funding the district or intermediate district is, or may have been, entitled to receive under the state school aid act of 1979,1979 PA 94, MCL 388.1601 to 388.1772, or any other source of state funding, by reason of the application of section 29 of article IX of the state constitution of 1963, which claims or potential claims are or were similar to the claims asserted by the plaintiffs in the consolidated cases known as [Durant 7]. [MCL 388.1611f(8).]
The scope of a release is controlled by the language of the release, and where, as here, the language is unambiguous, we construe it as written. Batshon v Mar-Que Gen Contractors, Inc, 463 Mich 646, 650; 624 NW2d 903 (2001).
After Durant I was finally resolved, the Legislature wanted to produce an outcome relating to the nonliti- *128 gating districts equivalent to those that litigated. Thus, funds were appropriated, conditioned on the recipient executing a release, which would place the recipient in a position comparable to that of the Durant I litigants. Accordingly, the recipients, having executed the release, are also barred from raising not only claims actually asserted in Durant I, but also all claims or potential claims through September 30, 1997, that are similar to those that were asserted. That being the case, we agree with the Court of Appeals that, pursuant to MCR 2.116(C)(7), those districts agreeing to the release are barred from raising the claims of counts I and II, and all but three claims of count III, because those claims existed before September 30, 1997, and they are similar to the claims asserted in Durant I.
C. CLAIMS ARISING AFTER 1997
Of all plaintiffs’ claims concerning the seven administrative rules, thirteen statutes, and one executive order, only a few involve post -Durant I mandates. Of the seven administrative rules identified in count I, six were promulgated in 1987 and one in 1983. Thus, none postdates Durant I, and the analysis in the res judicata and release sections of this opinion applies to bar these claims. Regarding count II, it concerns MCL 380.1284, for which the last amendment making substantive changes to mandated activities was 1995 PA 289. Thus, it similarly is barred. With regard to count III, one claim was withdrawn and one of the identified statutes was repealed.[20] Of the remaining ten statutes,[21] only two, MCL 380.1277 and 380.1282, include changes regarding *129 activities added after Durant I. The executive order also postdates Durant I, having been issued in 2000.
This leaves, then, these three claims that arguably are based on post -Durant I mandates. The first we turn to is the record-keeping activity claimed by plaintiffs to result from the interaction of MCL 388.1752 and EO 2000-9. We determine that the Court of Appeals erred in concluding that the statute and the order do not mandate new activities within the meaning of the Headlee Amendment. At the time the Headlee Amendment became effective, the statute required the school districts to “furnish to the department [of education] those reports as the department considers necessary for the determination of the allotment of funds under this act.”[22] 1977 PA 90, § 152. This provision was further amended by 1989 PA 197, § 152, which required schools to provide information “necessary for the administration of this act and for the provision of reports of educational progress ... .” Thus, during the pendency of Durant I, plaintiffs were already under a broad obligation to report to the state whatever information it required pursuant to its statutory duties. The Headlee Amendment is not necessarily implicated when the state increases or changes what information it requires because the schools’ obligation to provide that information has existed since before the time Headlee was effective. See Judicial Attorneys Ass’n, 460 Mich 599-600.
However, the executive order, which established the Center for Educational Performance and Information, empowered the Center to incorporate or implement two statewide databases: the Michigan Education Informa *130 tion System and the Database for Educational Performance and Information. Plaintiffs alleged that this requires school districts to create and maintain student data on an ongoing basis following state-specified data-gathering procedures and to transmit those data over the Internet to the state. The allegation here is that the state is not merely requiring different data from the school districts, but also requiring the districts to actively participate in maintaining data that the state requires for its own purposes. An off-loading of state funding responsibilities onto local units of government without the provision of funds presents a colorable claim under Headlee. See Judicial Attorneys Ass’n, supra at 603. In short, plaintiffs here alleged new requirements that were not funded at all. Accepting plaintiffs’ allegations as true, we find, at this stage in the proceedings, they have sufficiently stated a claim on which relief can be granted and thus this POUM claim survives defendants’ C(8) motion. Oakland Co, supra, at 166.[23] Furthermore, we note that, while the Court of Appeals granted summary disposition on this claim pursuant to MCR 2.116(0(10), defendants’ motion actually sought only C(7) and C(8) dismissal with regard to count III. If defendants had argued under a C(10) motion, plaintiffs would have been obliged to provide evidentiary support for their claims. However, under a C(8) motion, no such support is required. Thus, concerning the record-keeping activity, we find plaintiffs sufficiently stated a claim on which relief could be granted, and we reverse the Court of Appeals dismissal of this claim. On remand, the parties may explore the *131 factual support for plaintiffs’ allegations that this constitutes a new, unfunded mandate in violation of the Headlee Amendment.
The second post -Durant I activity involves special assistance to students having academic difficulty and is embodied in MCL 380.1282, last amended by 1997 PA 181. The amendment, added to the existing statute after Durant I, was permissive. That is, it identified special assistance a school district “may” provide to pupils experiencing academic difficulties. Such optional programs are expressly excluded from being “requirements” by MCL 21.234(5)(h), and thus are beyond the scope of the Headlee POUM clause as a matter of law.[24]
Similarly, the statute setting forth the third “new” activity, MCL 380.1277, was amended in 1997 to change the elements that must be included in a school improvement plan. That amendment added some elements and removed some, but the changes in essence simply reworded the criteria that existed before 1997.[25] We *132 therefore find that these changes did not impose any “new” or “increased” requirements on the schools as a matter of law.
In sum, we find plaintiffs sufficiently stated a cause of action regarding the record-keeping requirement, *133 but that neither of the other two post -Durant I mandates identified by plaintiffs imposes POUM requirements on the schools. These two requirements are either not “new” or are permissive and thus not “mandates.” Thus, neither runs afoul of the POUM funding requirement.
V CONCLUSION
Except for the record-keeping claim, we affirm the decision of the Court of Appeals, concluding that, except for three activities, the claims presented in the present action are barred by res judicata or release. Regarding the three post -Durant I activities, two are not “new unfunded mandates” because, as pleaded, the activities are simply not new or are merely permissive. With regard to the record-keeping requirement set forth in MCL 388.1752 and EO 2000-9, we find plaintiffs have sufficiently stated a claim on which relief may be granted. We reverse the Court of Appeals grant of summary disposition regarding this claim, and remand the case to that Court for further proceedings consistent with this opinion.
CORRIGAN, C.J., and Young and MARKMAN, JJ., concurred with Taylor J.

 Adair v Michigan, 250 Mich App 691; 651 NW2d 393 (2002).

 Throughout this opinion, for brevity’s sake, “activities and services” are frequently referred to as simply “activities.”

 Const 1963, art 9, §§ 25-34.

 The remedy provision reads:
Any taxpayer of the state shall have standing to bring suit in the Michigan State Court of Appeals to enforce the provisions of Sections 25 through 31, inclusive, of this Article and, if the suit is *113 sustained, shall receive from the applicable unit of government his costs incurred in maintaining such suit.

 For further discussion of the settlement and resolution, see the Court of Appeals opinion in this ease, Adair, 250 Mich App 691.

 These are: 1999 AC, R 340.1721e, R 340.1738, R 340.1740, R 340.1744, R 340.1745, R 340.1750, and R 340.1758.

 These include provisions for transitional services, a lower student-teacher ratio in four different situations, a classroom aide, adaptive devices, a director of special education, and autistic services.

 In 1978, local school districts were required to provide a minimum of 900 hours of pupil instruction a year; the statute increased this incrementally, requiring 1134 hours by 2006-2007.

 MCL 380.622, 380.1169, 380.1272a, 380.1277, 380.1278, 380.1279, 380.1280, 380.1282, 380.1282a, 380.1527, 388.1752, and 257.1851.

 The Court of Appeals opinion succinctly described these as
(1) an annual financial records audit by a certified public accountant for intermediate school districts; (2) the instruction of students regarding dangerous communicable diseases; (3) specialized training for teachers regarding human immunodeficiency virus infection and acquired immunodeficiency syndrome; (4) the provi *116 sion of a breakfast program; (5) the annual development and implementation of a three- to five-year school improvement plan [the “school improvement plan” obligation]; (6) the development of a continuing school improvement process; (7) the provision of a core academic curriculum; (8) the administration of state assessment tests to high school pupils; (9) the provision of remedial educational services and periodic retesting for pupils who fail the required assessment tests; (10) the accreditation of school buildings; (11) the provision of “learning processes” and special and sufficient assistance to each pupil in order to enable each pupil to achieve a state-endorsed diploma [the “special assistance” obligation]; (12) the provision of summer school classes for pupils who fail to meet standards for basic literacy skills or basic mathematics skills by the end of the third grade year; (13) the provision of a minimum of four days of “teacher professional development” in the 2000-01 school year and a minimum of five days in the 2001-02 school year and each subsequent school year; (14) the creation and maintenance of data on “essential student data elements” and the transmission of this data through the Internet in a standardized form to the Department of Education . .. [the “record-keeping” obligation]; and (15) the provision of compensation to school bus drivers for time spent attending various training and tests. [250 Mich App 699-701.]

 1979 PA 94, § 512.

 1989 PA 197, § 152.

 Although Oakland Co dealt with mos claims, as we noted in Judicial Attorneys Ass’n, supra at 598 n 2, that does not make it “inapplicable to an analysis of the second sentence of § 29.” Thus, the requirements of POUM claims are, in this respect, similar to MOS claims.

 We find Justice Kelly’s implication (post at 135-136 n 3) that any taxpayer moving to the state after 1997 could relitigate any Durant I claim unreasonable not merely because it would be burdensome to the parties and the courts but also because it would preclude ever having a final answer upon which state and local governments could confidently act. It is indeed such concerns that have animated the judicial utilization of the doctrine of res judicata. As we said in In re MCI, 460 Mich 396, 431 n 7; 596 NW2d 164 (1999), "The doctrine of res judicata was judicially created in order to ‘relieve parties of the cost and vexation of multiple lawsuits ....’”

 This is not to say, as Justice Weaver suggests (post at 145-146), that these plaintiffs lack standing. Any taxpayer may bring a claim—that is, any taxpayer has standing. If the claim concerns an issue that has already been the subject of litigation, it is subject to the doctrine of res judicata.

 Although plaintiffs’ brief to this Court asserts that their complaint specifically claimed that the state failed to meet its funding obligation “by operation of the 2000 amendment to the Act, 2000 PA 297,” no such claim or enactment was alleged in the complaint. Contrary to Justice Cavanagh’s assertion, we do not create here a “new requirement” for pleading. Post at 153. We simply note that, as pleaded (including *126 plaintiffs’ response to defendant’s motions to dismiss), plaintiffs’ claims were indistinguishable from those of Durant I.

 Plaintiffs offer no evidence that, during the pendency of Durant I, they made any effort to add these claims under MCE 2.118(E). We thus find no basis for their assertion that they could not have litigated the claims in the earlier suit.

 For example, under the approach of Justice Kelly’s dissent, an individual taxpayer from the Saginaw School District could file a particular claim on Monday that is resolved, then a taxpayer from the Bay City School District could file an identical claim on Tuesday that is resolved, and a taxpayer from the Midland School District could file an identical claim on Wednesday that is resolved, and so on.

 Indeed, stare decisis apparently would not work here, as can be seen by Justice Kelly’s conclusion that all the claims of the non-Durant I individual litigants would be allowed by that doctrine, where we would find them barred by res judicata.

 The claim concerning MCL 380.622 was withdrawn, and MCL 380.1282a was repealed.

 These are: MCL 380.1169, 380.1272a, 380.1277, 380.1278, 380.1279, 380.1280, 380.1282, 380.1527, 388.1752, and 257.1851.

 As noted above, this provision was, in 1978, codified at MCL 388.1552, and renumbered by 1979 PA 94, § 152, and amended by 1989 PA 197, § 152.

 The dissenting opinion in the Court of Appeals urges the taking of testimony and fact-finding by a special master before a decision is made on defendants’ motion. 250 Mich App 715-716. We find that unauthorized because a C(8) motion is based on the pleadings alone. MCR 2.116(G)(5).

 Justice Kelly’s dissent, correctly pointing out that MCL 380.1282 includes a “meeting” activity that is merely permissive in that statute but mandated in MCL 380.1279, asserts that when these two statutes are read together, the result is a new, mandatory activity. Post at 134-135. We disagree. The mandate of MCL 380.1279 was effective in 1993 and thus any claim that the meeting is a new mandate is barred for the same reasons as the other pre-Durant I claims. The meeting guidelines set forth in MCL 380.1282 are, indeed, new to that statute, but they existed verbatim in the pr e-Durant I version of MCL 380.1279. They, therefore, are not new.

 For example, before the amendment, school improvement plans had to include:
(a) Identification of the adult roles for which graduates need to be prepared.
(b) Identification of the education and skills that are needed to allow graduates to fulfill those adult roles.
*132 (c) A determination of whether or not the existing school curriculum is providing pupils with the education and skills needed to fulfill those adult roles.
(d) Identification of changes that must be made in order to provide graduates with the necessary education and skills and specific recommendations for implementing those changes.
(e) Development of alternative measures of assessment that will provide authentic assessment of pupils’ achievements, skills, and competencies.
(f) Methods for effective use of technology as a way of improving learning and delivery of services and for integration of evolving technology in the curriculum.
(g) Ways to make available in as many fields as practicable opportunities for structured on-the-job learning, such as apprenticeships and internships, combined with classroom instruction.
The 1997 amendment changed these to include:
(a) Goals centered on improving student academic learning.
(b) Strategies to accomplish the goals.
(c) Evaluation of the plan.
(d) Development of alternative measures of assessment that will provide authentic assessment of pupils’ achievements, skills, and competencies.
(e) Methods for effective use of technology as a way of improving learning and delivery of services and for integration of evolving technology in the curriculum.
(f) Ways to make available in as many fields as practicable opportunities for structured on-the-job learning, such as apprenticeships and internships, combined -with classroom instruction.