*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

CHRISTOPHER DIPIERO and DONALD R.
VILAND,

        Plaintiffs-Appellants,

v

DUSTY FARMER, CLERK OF OSHTEMO
CHARTER TOWNSHIP,

        Defendant-Appellee.

UNPUBLISHED
May 30, 2024

No. 367046
Kalamazoo Circuit Court
LC No. 2023-0232-AW

---

Before: YATES, P.J., and CAVANAGH and BOONSTRA, JJ.

PER CURIAM.

In August 2021, the Oshtemo Charter Township Board of Trustees decided to issue bonds not to exceed $30 million to fund a sanitary sewer expansion. That vote prompted an effort to put the matter before local voters in a referendum, but the township clerk found many of the signatures and 117 full petition sheets were invalid, so the petition for a referendum failed and the voters did not get to weigh in on the issuance of bonds. Thomas Graham, who disliked that outcome, filed a complaint seeking a writ of mandamus directing the township clerk to validate the petition sheets and place the referendum on the ballot for a vote by the local electorate. But the trial court in that case ruled against Graham, and this Court affirmed that ruling. *Graham v Oshtemo Charter Twp Clerk*, unpublished per curiam opinion of the Court of Appeals, issued November 10, 2022 (Docket No. 361996).

In a rational world, this Court's ruling would have ended the matter. But in 2023, plaintiffs, Christopher DiPiero and Donald Viland, filed a complaint for mandamus requesting the very same relief that this Court had rejected in *Graham*. Predictably, the trial court concluded that plaintiffs' action was barred by res judicata. But plaintiffs appealed that ruling of right, so we must consider whether plaintiffs can proceed with their complaint for mandamus in the face of this Court's ruling in *Graham*. We review de novo the trial court's resolution of this case on the basis of res judicata. See *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co*, 509 Mich 276, 282; 983 NW2d 401 (2022).

Plaintiffs do not dispute that the *Graham* case was decided on the merits, but they contend that the doctrine of res judicata does not apply in this case because they are suing in their capacity as circulators with interests distinct from the plaintiff in *Graham*. Our Supreme Court has observed that the doctrine of res judicata "is employed to prevent multiple suits litigating the same cause of action." *Adair v State*, 470 Mich 105, 121; 680 NW2d 386 (2004). "The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id*. Our Supreme Court "has taken a broad approach to the doctrine of res judicata," explaining that "it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id*.

Because plaintiffs concede that *Graham* was decided on the merits, we are left to consider whether *Graham* and this case involve the same parties or privies. To be "in privity" is "to be so identified in interest with another party that the first litigant represents the same legal right that the current litigant is trying to assert." *Id*. at 122. "The outer limit" of res judicata "requires both a 'substantial identity of interests' and a 'working functional relationship' in which the interests of the nonparty are presented and protected by the party in the litigation." *Id*.

In plaintiffs' documents filed in the circuit court, they attempted to distinguish their identity as "circulators" from that as "electors." Plaintiffs assert that, unlike the plaintiff in *Graham*, they filed suit in their capacity as circulators, not electors. But plaintiffs cannot explain how those two classifications differ or how their interests are distinguishable from that of the plaintiff in *Graham*. Indeed, as the trial court noted, plaintiffs' complaint is virtually identical to the complaint filed in *Graham*.[1] In their complaint, plaintiffs identified themselves as residents and thus electors, giving them standing to bring a claim. That characterization is identical to the assertion made in Graham's complaint regarding his standing.[2] In addition, plaintiffs seek a writ of mandamus to reinstate the

---

[1] In *Graham*, the plaintiff undertook his appeal of right *in propria persona*. Likewise, plaintiffs in this case have chosen to proceed *in propria persona*, and their legal arguments track the arguments made by the plaintiff in *Graham*. As a result, this case appears to be virtually identical to the case that this Court resolved in its unpublished decision in *Graham*. Therefore, even if plaintiffs in this case can escape the preclusive impact of the doctrine of res judicata, the outcome on the merits of their demand for mandamus almost certainly will be dictated by this Court's analysis in *Graham*.

[2] Paragraph 2 of the complaint for mandamus in *Graham* alleged that, "[a]s a resident of Oshtemo, Mr. Graham is an elector and has an interest in signed petitions seeking a referendum on Oshtemo's intent to issue $30,000,000.00 ("$30M") in bonds for capital improvement – a sewer." Similarly, plaintiffs in this case alleged in paragraph 3 of their complaint for mandamus that, "[a]s residents of Oshtemo, Plaintiffs are electors and have an interest in the signed petitions seeking a referendum on Osthemo's intent to issue $30,000,000 ("$30M") in bonds for capital improvement – extending an existing sewer."

signatures that were previously voided, which is the very same relief that Graham demanded.[3]  In sum, plaintiffs inescapably are "in privity" with the plaintiff in *Graham*.

Turning to the third requirement of the doctrine of res judicata, we must determine whether the claim in this case was, or could have been, resolved in *Graham*.  Plaintiffs insist that the claim could not have been resolved because Graham was not a "circulator."  Therefore, Graham was not required to take steps that the plaintiffs had to take to act under MCL 141.2517(2).  That argument is factually incorrect.  The plaintiff in *Graham* tried to make the argument on behalf of the petition circulators because he was administered the oath as a "circulator," but he referred to circulators as "collectors."[4]  Here, plaintiffs argue that the oath and notarization requirement is unconstitutional, so the township clerk must accept all the petitions.  "A constitutional challenge to the validity of a statute can be brought in one of two ways: by either a facial challenge or an as-applied challenge." *In re Forfeiture of 2000 GMC Denali & Contents*, 316 Mich App 562, 569; 892 NW2d 388 (2016). This Court declined to address the arguments for unconstitutionality that Graham offered because this Court deemed those arguments "unrelated to the reasons the township clerk cited for rejecting the petitions." *Graham*, unpub op at 4.  Because we agree with that approach, we likewise decline to address those arguments here.

Affirmed.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra

---

[3] The numerous striking similarities between the complaint in *Graham* and the complaint in this case leave no doubt that the complaint in *Graham* served as a template for the allegations and legal arguments advanced in this case.

[4] The word "circulator" does not appear anywhere in MCL 141.2517(2), but the statute mandates that "[s]ignatures on the petition shall be verified by a person under oath as the actual signatures of the persons whose names are signed to the petition[.]"