*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WALTER CAIN and MAVIS R. CAIN,

UNPUBLISHED
July 18, 2024

Plaintiffs/Counterdefendants-
Appellants,

v

No. 366448
Mecosta Circuit Court
LC No. 19-024820-CZ

CONSUMERS ENERGY,

Defendant/Counterplaintiff-Appellee.

Before: CAMERON, P.J., and M. J. KELLY and YATES, JJ.

PER CURIAM.

Plaintiffs, Walter and Mavis Cain, appeal of right the trial court's order directing a verdict for defendant, Consumers Energy, with regard to plaintiffs' claims of nuisance and trespass. After plaintiffs finished presenting proofs at trial, the trial court ruled that plaintiffs' trespass claim was barred by res judicata and that plaintiffs had not properly followed the procedure for pursuing their public nuisance claim. We reverse those rulings and remand the case for further proceedings.

## I. FACTUAL BACKGROUND

Plaintiffs own a parcel of property in Mecosta County on which they operate a public-use airport and mine gravel for sale. In 2017, defendant, which had an easement on plaintiffs' property, replaced utility poles on the easement. The new poles placed on the side of the runway were taller than the old poles, prompting plaintiffs' concern that the higher poles and wires might present a danger to aircraft. Plaintiffs first contacted defendant, the Michigan Department of Transportation, and the Federal Aviation Administration, and then plaintiffs filed this lawsuit on February 4, 2019. In their complaint, plaintiffs asserted that defendants' construction constituted a trespass because the height and different locations of the new poles and anchor wires that extended onto plaintiffs' property exceeded the rights granted in the original easement. Plaintiffs also claimed that the new poles and anchor wires interfered with the operation of plaintiffs' gravel pit, endangered aircraft, and forced plaintiffs to erect a new fence for their cattle. Plaintiffs later summarized their trespass claim by explaining that they wanted to be paid for the gravel surrounding their property that was taken by condemnation. Additionally, plaintiffs alleged that the higher poles and wires constituted

-1-

both a public nuisance and a private nuisance because of the danger to aircraft that used the airport and the interference with plaintiffs' use of their gravel pit. Plaintiffs asked the trial court to award monetary damages and order the abatement of the nuisance by restricting new poles to the original sizes and locations of the original poles.

While this case was pending, defendant filed a separate condemnation suit against plaintiffs concerning a small area on which some of the newly installed equipment was placed. That action was the subject of case evaluation, which resulted in a resolution when the parties agreed to accept the case-evaluation award in September 2022. The stipulated dismissal filed by the parties stated in sweeping terms that "[t]he case evaluation award is a complete compromise and settlement of all asserted and unasserted claims pertaining to necessity and for just compensation . . . ." But it also specified that it did "not affect or alter any claims or defenses of any party" in the instant case.

This case, which remained unresolved despite the case-evaluation process, went to trial on November 15, 16, and 17, 2022. After plaintiffs rested their case-in-chief, defendant made an oral motion for a directed verdict on plaintiff's claims pursuant to MCR 2.516. Defendant asserted that it was entitled to a directed verdict on the trespass claim because plaintiffs should not be allowed to pursue any claim for damages related to sand and gravel. Defendant insisted that those damages either were, or could have been, addressed in the condemnation case, and therefore plaintiffs were barred from pursuing those damages in this case under res judicata. Addressing the factors relevant to res judicata, defendant argued that (1) the condemnation case was decided on the merits because it was resolved via acceptance of the case-evaluation award, (2) the parties in this case were also parties to the condemnation case, and (3) plaintiffs had the opportunity to pursue damages for sand and gravel that was underneath the utility poles and guy wires and outside of the easement in the condemnation case, but plaintiffs did not pursue those damages in that case.

Plaintiffs responded that they were not compensated for the land surrounding the easement and they had no opportunity to pursue damages for the land adjacent to the condemned land in the condemnation case. Plaintiffs explained that their unsuccessful attempt to bring a similar claim in the condemnation case did not bar their trespass claim in this case because that claim was legally prohibited in the condemnation case. However, the trial court agreed with defendant and held that plaintiffs' trespass claim was barred by res judicata because the condemnation case was resolved on the merits, it involved the same parties, and the trespass issue was, or could have been, decided in the condemnation case.

Defendant further claimed an entitlement to a directed verdict on plaintiffs' nuisance claim. First, defendant asserted that, as a matter of law, the larger poles did not overburden the easement. But plaintiffs clarified that the claim focused on the hazard created by the larger poles as a nuisance and insisted that whether the easement was overburdened was of little importance compared to the hazard the poles posed. The trial court agreed that plaintiffs could not argue that the easement was overburdened, but that did not foreclose plaintiffs' claim that the poles were a nuisance.

Defendant then argued that it was entitled to a directed verdict on plaintiffs' nuisance claim because this was not an issue for a jury to decide under MCR 3.601.[1] Defendant asserted that the jury did not have the authority to order an abatement of a nuisance. The trial court initially agreed, but noted that the jury could still decide whether it was a nuisance, and then the court could decide how to abate the nuisance. Defendant insisted that the entire nuisance issue was not triable by the jury and told the court that it was not prepared to argue about appropriate abatement at that time.

The trial court also observed that MCR 3.601 only dealt with public nuisances. Defendant agreed that that court rule was not applicable to private nuisance claims. Plaintiffs responded that, for the public nuisance claim, the jury could determine whether the new poles were a nuisance as an advisory opinion for the trial court, citing MCR 2.509(D). Defendant stated that it would have litigated the case differently if it had known that plaintiffs were seeking equitable relief, so it was inappropriate at that late stage for the trial court to rule on an equitable remedy.

The trial court ultimately agreed with defendant that the nuisance claim must be dismissed. The trial court determined that, pursuant to MCR 3.601, "the procedure to abate public nuisances is through a nonjury action not a jury trial and that issue was not appropriate for the jury to make a determination on [a]nd it has not been presented as a nonjury issue." Accordingly, the trial court discharged the jury and entered a written order dismissing plaintiffs' claims. Plaintiffs moved for reconsideration, but the trial court denied that motion in a written order issued on March 7, 2023. This appeal followed.

## II. LEGAL ANALYSIS

On appeal, plaintiffs contend that the trial court erred in granting defendant's motion for a directed verdict and dismissing their claims. We shall consider the viability of each of plaintiff's claims, i.e., nuisance and trespass, in turn. This Court reviews "de novo a trial court's decision on a motion for directed verdict." *Anaya v Betten Chevrolet, Inc*, 330 Mich App 210, 215; 946 NW2d 560 (2019). "A directed verdict is appropriate only when no factual question exists upon which reasonable minds could differ." *Id*. "In deciding whether a directed verdict is appropriate, the trial court must view the testimony and all legitimate inferences from the testimony in the light most favorable to the nonmoving party; we review the evidence in the same manner." *Id*. at 215-216. "The trial court may not substitute its judgment for that of the jury when the evidence could lead reasonable jurors to disagree." *Id*. at 216. Such motions are governed by MCR 2.516, which establishes the procedural requirements of a motion for a directed verdict.

## A. PRIVATE NUISANCE

Plaintiffs aptly observe that the trial court failed to address their claim of private nuisance, so plaintiffs insist that it erred by only addressing the public nuisance claim when determining that dismissal was appropriate. Plaintiffs further contend that that error was not harmless because there was substantial evidence to support their claim of private nuisance. Conversely, defendant argues

---

[1] Under MCR 3.601(A), "[a]ctions to abate public nuisances are governed by the general rules of procedure and evidence applicable to nonjury actions, except as provided by the statutes covering public nuisances and by this rule."

that there was no material question of fact as to whether the utility poles created a private nuisance. We conclude that the trial court erred in neglecting to address plaintiffs' claim of private nuisance, so we must reverse the order directing a verdict in defendant's favor on the private nuisance claim.

A private nuisance is a non-trespassory invasion of another's interest in the private use and enjoyment of its land. *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 193; 540 NW2d 297 (1995). In contrast, a public nuisance is "an unreasonable interference with a common right enjoyed by the general public." *Id*. at 190. The elements of private nuisance exist when "(a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm, (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct." *Id*. at 193 (quotation marks and citation omitted).

Plaintiffs' complaint pleaded a single nuisance claim. Within that claim, they asserted that the poles constituted both a public and private nuisance. Defendant does not dispute that plaintiffs' claim included private nuisance. In fact, defendant acknowledged that plaintiffs alleged "both a private nuisance and a public nuisance" in arguing in favor of the directed verdict. The trial court also acknowledged the existence of a private nuisance claim, and questioned whether that claim was subject to MCR 3.601(A), which is titled "Public Nuisances." Defendant acknowledged that private nuisance claims were not covered by that rule. Yet the trial court relied on MCR 3.601(A) to dismiss plaintiffs' nuisance claim in its entirety.

According to MCR 3.601(A), under the subheading "Procedure to Abate Public Nuisance," "[a]ctions to abate public nuisances are governed by the general rules of procedure and evidence applicable to nonjury actions, except as provided by the statutes covering public nuisances and by this rule." MCR 3.601(A). The trial court held that MCR 3.601(A) established that the procedure to abate a public nuisance was through a nonjury trial, and therefore it was not appropriate for the jury to make a determination on plaintiffs' public nuisance claim because plaintiffs did not present the case as a nonjury issue. The trial court then discharged the jury, and neither party revisited the private nuisance issue.

The language of MCR 3.601(A) makes clear that the application of the rule is restricted to actions "to abate public nuisances." See *Yopek v Brighton Airport Ass'n, Inc.*, 343 Mich App 415, 423; 997 NW2d 481 (2022) ("MCR 3.601 governs the procedure for public-nuisance actions."). Accordingly, it had no bearing on plaintiffs' private nuisance claim, so the trial court erred when it dismissed plaintiffs' nuisance claim in its entirety based on MCR 3.601. The trial court did not make findings concerning the evidence presented on the elements of either type of nuisance before dismissing the action on the ground that the public nuisance claim was procedurally deficient. As a result, we must remand this case to afford the trial court the opportunity to rule on defendant's motion for a directed verdict of plaintiffs' private nuisance claim.

B. PUBLIC NUISANCE

Plaintiffs also challenge the trial court's decision to grant defendant's motion for a directed verdict and dismiss plaintiffs' public nuisance claim. The trial court rendered that ruling based on MCR 3.601(A) and the conclusion that plaintiffs improperly brought their public nuisance claim

-4-

as a jury matter when it could only have been framed as a nonjury matter. But on appeal, defendant does *not* argue that the trial court correctly dismissed plaintiffs' public nuisance claim on the basis of MCR 3.601(A). Instead, defendant contends that the trial court's dismissal of plaintiffs' public nuisance claim was appropriate because there was no nuisance as a matter of law.

A public nuisance is defined as an "unreasonable interference with a common right enjoyed by the general public." *Cloverleaf Car Co*, 213 Mich App at 190. "Unreasonable interference" includes conduct that "(1) significantly interferes with the public's health, safety, peace, comfort, or convenience, (2) is proscribed by law, or (3) is known or should have been known by the actor to be of a continuing nature that produces a permanent or long-lasting, significant effect on these rights." *Id*. With respect to claims of public nuisance, this Court has explained that "[w]hether or not a particular thing or act is a nuisance is a question of fact for the jury, unless reasonable minds cannot differ." *Cavaliere v Adults for Kids*, 149 Mich App 756, 763-764; 386 NW2d 667 (1986). Under MCR 3.601(A), "[a]ctions to abate public nuisances are governed by the general rules of procedure and evidence applicable to nonjury actions, except as provided by the statutes covering public nuisances and by this rule."

Here, the trial court directed a verdict for defendant on plaintiffs' public nuisance claim on procedural grounds, concluding that MCR 3.601 precluded presentation of a public nuisance claim to a jury.[2] But this case was not just an action to abate a public nuisance subject to MCR 3.601(A). The complaint requested the equitable relief of abatement, and it also sought monetary damages. Additionally, the court rules permit a trial court to try jury-trial and bench-trial claims in the same proceeding, MCR 2.509(C),[3] or to rely on an advisory jury and then "direct entry of the appropriate judgment." MCR 2.517(A).[4] See also MCR 2.509(D).[5] Defendant does not contend otherwise. Thus, the trial court could have asked the jury to resolve any factual issues, and then the trial court

---

[2] On appeal, defendant suggests that the trial court dismissed plaintiffs' public nuisance claim on the basis of a substantive determination that plaintiffs had failed to establish their nuisance claim. Defendant insists the trial court, "having heard the testimony of these two witnesses, and having considered Exhibits 1-11 and 13-15, fully understood that there was no nuisance as a matter of law and, as such, the motion for directed verdict was appropriately granted." That is not accurate. The trial court actually dismissed the public nuisance claim on procedural grounds under MCR 3.601.

[3] MCR 2.509(C) states that "[i]n an action in which some issues are to be tried by jury and others by the court, or in which a number of claims, cross-claims, defenses, counterclaims, or third-party claims involve a common issue, the court may determine the sequence of trial of the issues, preserving the constitutional right to trial by jury according to the basic nature of every issue for which a demand for jury trial has been made under MCR 2.508."

[4] MCR 2.517(A)(1) provides that "[i]n actions tried on the facts without a jury or with an advisory jury, the court shall find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment."

[5] MCR 2.509(D)(1)-(2) state that "in actions involving issues not triable of right by a jury because of the basic nature of the issue, the court on motion or on its own initiative may . . . try the issues with an advisory jury; or . . . with consent of all parties, order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right."

could have decided whether to award equitable relief. The trial court erred by granting a directed verdict to defendant and dismissing plaintiffs' public nuisance claim on procedural grounds. We therefore remand for the trial court to consider the substantive merits of defendant's motion for a directed verdict on plaintiffs' public nuisance claim.

## C. TRESPASS

Plaintiffs fault the trial court for granting a directed verdict to defendant and dismissing the trespass claim. They insist that the trial court erred in finding that the trespass claim was, or could have been, resolved in the condemnation case. They assert that, although they sought damages for the lost minerals and gravel in the condemnation case, they were prevented from recovering those damages as a matter of law because those damages were an unavailable remedy in a condemnation action. Thus, they contend that res judicata does not prevent them from seeking those damages in this case. Indeed, to hold otherwise would bar plaintiffs from pursuing their damages in either the condemnation case or this case, leaving them with no avenue to recover those damages.

The application of res judicata is reviewed de novo. *Garrett v Washington*, 314 Mich App 436, 440-441; 886 NW2d 762 (2016). The purpose of res judicata is to prevent multiple lawsuits litigating the same cause of action. *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 418; 733 NW2d 755 (2007). "The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004). Michigan courts apply the doctrine broadly to bar not only all claims that were actually litigated, "but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id*. Consequently, even when plaintiffs "raise new theories of liability," a suit is barred when "proof of the same facts or evidence as required to sustain the previous action is necessary" to maintain the subsequent suit. *Jones v State Farm Mut Auto Ins Co*, 202 Mich App 393, 401-402; 509 NW2d 829 (1993).

Here, the trial court concluded that plaintiffs' claim for damages resulting from defendant's purported trespass was barred by res judicata.[6] The trial court stated that the parties' condemnation case had already addressed the value of the gravel that could not be removed without upsetting the new utility-pole supports. Thus, we must decide whether plaintiffs' claim for damages in trespass was, or could have been, decided in the condemnation case.

In the condemnation action, defendant moved to preclude testimony concerning the value of sand and gravel under the land for which it was seeking partial condemnation for its poles and anchor wires, asserting that the minerals were "not recoverable as elements of just compensation." The trial court in the condemnation matter granted the motion to exclude testimony "regarding the value of sand and gravel" under the condemned land, but permitted opinion testimony concerning

---

[6] On the first day of trial, defendant raised a similar res judicata argument because the damages plaintiffs were seeking in the instant case were similar to the amount initially demanded in the condemnation case. The trial court ruled that "there is not res judicata in regard to the amounts," and noted that it had previously held that plaintiffs could not seek damages for the value of mineral rights under the easement.

"the fair market value of the real property partially taken." Plaintiffs tried to appeal that decision, but this Court denied the application "for failure to persuade the Court of the need for immediate appellate review." *Consumers Energy Co v Cain*, unpublished order of the Court of Appeals, entered February 2, 2022 (Docket No. 358532). In their application for leave to appeal, plaintiffs contended that the value of the gravel and minerals on their property had to be taken into account in determining just compensation, and that the trial court erred when it found otherwise.

Therefore, plaintiffs attempted to present a claim for the value of the sand and gravel within the condemned property in the condemnation action, but they were barred from pursuing that claim in the condemnation case. Indeed, defendant presented expert testimony that included the opinion that the highest and best use of the land was commercial operations, not mining of sand and gravel, so plaintiffs' available compensation did not include the value of the gravel and sand in that area. Instead, plaintiffs were only entitled to compensation for the land actually taken by defendant. So when plaintiffs calculated their requested damages in the condemnation case, they did not include the value of any minerals in the condemned parcel of property. Plaintiffs' counsel reiterated that point in asserting that res judicata did not apply to the trespass claim, explaining that "as far as the trespass issue that still remains . . . we want to be paid for that gravel that surrounds the property that was taken by condemnation." Accordingly, the damages plaintiffs sought for sand and gravel compensation in this case were not the same as those sought in the condemnation case. For these reasons, the trial court erred by concluding that plaintiffs' claim for damages in trespass stemming from the prevention of mineral collection was previously litigated, and thus barred by res judicata.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Christopher P. Yates

-7-