*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GEORGANNA RODGERS,

Plaintiff-Appellee,

v

AUTO OWNERS INSURANCE COMPANY,

Defendant-Appellant.

UNPUBLISHED
December 17, 2019

No. 344408
Lenawee Circuit Court
LC No. 15-005471-NF

Before: FORT HOOD, P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

In this declaratory-judgment action brought under the no-fault act, MCL 500.3101 *et seq.*, defendant appeals as of right the trial court's order granting summary disposition in favor of plaintiff. For the reasons set forth in this opinion, we reverse and remand for entry of an order granting summary disposition in favor of defendant.

## I. BACKGROUND

This appeal arises from a June 24, 2014 motor vehicle accident in which a vehicle driven by Michael Allen Curtis hit plaintiff as she was walking across a crosswalk. The parties do not dispute that plaintiff suffered fractured ribs, a right scapula fracture, and a subdural hematoma in her brain. Plaintiff filed this action against defendant, her no-fault insurer, seeking a declaratory judgment and damages. Plaintiff's complaint alleged two counts. Count I alleged that defendant refused to pay no-fault personal protection insurance (PIP) benefits for services that were medically necessary and reasonable. Plaintiff requested that the trial court enter a declaratory judgment requiring defendant to "comply with the provisions of [the no-fault act] and the terms of [d]efendant's insurance policy" and provide plaintiff with PIP benefits for her "medical issues including but not limited to her dementia." Count II alleged that plaintiff had "incurred medical expenses, wage loss, household replacement expenses, attendant care and other expenses which [d]efendant [was] obligated to pay."

Plaintiff had also filed a prior action against Curtis and defendant in LC No. 15-005400-NF. In that case, plaintiff alleged a claim for negligence against Curtis (Count I), and alleged claims against defendant for recovery of underinsured motorist benefits (Count II) and recovery

of PIP benefits (Count III). After defendant filed answers to both complaints, the trial court entered a stipulated order consolidating the cases "for all purposes except for trial." Following a five-day trial in LC No. 15-005400-NF that concluded on November 20, 2017, a jury (1) determined that the accident aggravated plaintiff's preexisting dementia, and (2) awarded plaintiff $38,495.50 in allowable attendant care expenses.

Thereafter, plaintiff filed a motion for summary disposition in this case under MCR 2.116(C)(7) and (C)(10), arguing that she was entitled to summary disposition on the basis of res judicata and collateral estoppel because the jury in LC No. 15-005400-NF concluded that her preexisting dementia was exacerbated by the accident, and defendant "cannot contest the relationship of [p]laintiff's dementia to the motor vehicle crash[.]" Plaintiff argued that

> [a]s a consequence of the jury verdict rendered in the prior action, Auto-Owners Insurance Company has become responsible for the payment of reasonably necessary medical expenses associated with [p]laintiff's dementia, including the payment of all medical bills as well as payment for the care and supervision [p]laintiff may require at home.

Specifically, plaintiff claimed that, under the doctrine of collateral estoppel, the key issues in dispute had already been litigated and decided because the jury in the prior action had determined that (1) plaintiff's dementia "was related to the motor vehicle crash," and (2) the PIP benefits plaintiff sought were "reasonably necessary." Plaintiff also argued that summary disposition was appropriate under a res judicata theory because "the same core issue is involved in both cases, i.e., whether [p]laintiff's dementia is related to the crash." Plaintiff alleged that, following the jury trial, she had provided affidavits of attendant care to defendant requesting payment for "24/7 attendant care," but defendant had denied the request for payment, although such services were medically necessary. According to plaintiff, because the jury had concluded that the accident aggravated and contributed to plaintiff's dementia, the doctrines of collateral estopped and res judicata applied to preclude defendant from challenging its liability for the expenses of plaintiff's attendant care services.

In support of her motion, plaintiff submitted the April 20, 2016 report of Dr. Bradley G. Sewick, Ph.D., who conducted a neuropsychological evaluation of plaintiff on April 11 and 12, 2016. Dr. Sewick opined that because plaintiff had experienced "a substantial decline in her functioning in the past 20 months . . . beyond that which would be expected in a patient with small vessel disease[,]" the traumatic brain injury that plaintiff suffered in the accident "may have likely precipitated a more aggressive dementing process[.]" Observing that plaintiff could not perform child care independently or drive, Dr. Sewick further noted that plaintiff, "in need of ongoing appropriate medical care and management[,]" would also require "oversight, supervision, monitoring, and availability for direct assist around the clock given the nature of her limitations." Plaintiff also submitted Dr. Sewick's deposition, in which he testified that, under optimum circumstances, plaintiff would require around-the-clock care because it was necessary for her safety and well-being.

Defendant filed its response to plaintiff's motion disputing that either res judicata or collateral estoppel applied to prevent it from challenging plaintiff's entitlement to around-the-clock attendant care as an allowable no-fault expense. Defendant acknowledged that the jury in

the prior action determined that plaintiff's dementia was exacerbated by the accident, but disputed that this determination settled the question whether plaintiff could recover no-fault benefits for around-the-clock attendant care. According to defendant, the judgment in the prior action "made no mention of future [no-fault] benefits[,]" and the attendant care services for which plaintiff sought reimbursement at trial, and for which she received an award of $38,495.50, were incurred between June 22, 2015 and August 2017. Defendant further argued that the doctrine of res judicata could actually be used defensively to bar plaintiff's claim, and therefore, requested summary disposition in its favor under MCR 2.116(I)(2). Alternatively, defendant argued that there were questions of fact whether plaintiff required around-the-clock attendant care that was reimbursable as a no-fault benefit, which precluded summary disposition in favor of plaintiff.

The trial court granted plaintiff's motion, stating:

> All right. The order of judgment and the form of jury verdict [in the prior action] states [sic] that the plaintiff sustained the bodily injury that aggravated and exacerbated the dementia and that allowable expenses that consist of plaintiff's care, recovery, or rehab are covered. In this case the attendant care submitted and signed by plaintiff's doctors satisfy this requirement. I do believe that res judicata, the elements, are met in this matter. Dementia was exacerbated by the injuries suffered in the accident, and this is a progressive disease and round-the-clock [sic] care and the number of hours as recommended by the doctors [sic]. So I will grant your motion.

The trial court's order granting summary disposition provides, in pertinent part:

> [T]he Court being fully advised in the premises, the Court finds:
>
> (1) Plaintiff's dementia was aggravated or exacerbated by the motor vehicle crash occurring on June 24, 2014, and
>
> (2) Plaintiff requires 24/7 attendant care for dementia suffered as a consequence of the crash[.]

Defendant now appeals.

## II. STANDARD OF REVIEW

Plaintiff moved for summary disposition under MCR 2.116(C)(7) (claim barred by a prior judgment) and (C)(10) (no genuine issue of material fact). The trial court's ruling on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, ___ Mich ___, ___; ___ NW2d ___ (2019) (Docket No. 157846); slip op at 6. In reviewing the trial court's decision to grant summary disposition under MCR 2.116(C)(7), this Court must review the documentary evidence submitted by the parties, "accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict it." *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411, 419; 684 NW2d 864 (2004). The following standards apply to a motion under MCR 2.116(C)(10):

A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil*, ___ Mich at ___; slip op at 7 (citations and quotation marks omitted).]

This Court also reviews de novo "the application of legal doctrines, such as res judicata and collateral estoppel." *Estes v Titus*, 481 Mich 573, 579; 751 NW2d 493 (2008).

### III. ANALYSIS

On appeal, defendant argues that the trial court erred by granting summary disposition in favor of plaintiff on the basis of res judicata. We agree.

As our Supreme Court has explained, the primary purpose of res judicata is to avoid "multiple suits litigating the same cause of action." *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004).

The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. [*Id*.]

Our Supreme Court has taken "a broad approach" to the application of the doctrine of res judicata, such that it will bar claims that were already litigated, as well as "every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id*. With respect to the last element of res judicata, the doctrine will preclude every claim "arising from the same transaction" that the parties, in the exercise of due diligence, could have raised but did not. *Id*. at 123.

Observing that confusion existed among the bench and bar regarding the "same evidence" and "same transaction" tests, the Supreme Court in *Adair* clarified the distinction between the two, and as pertinent to this appeal, instructed that, because Michigan courts have employed the "broader transactional test[,]" the pivotal inquiry is "whether the claims in the instant case arose as part of the same transaction as did the claims" in the earlier case. *Id*. at 124-125. Specifically, the Court explained:

"Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*, [and] whether they form a convenient trial unit . . . ." 46 Am Jur 2d, Judgments 533, p 801. [*Adair*, 470 Mich at 124 (alteration in original).]

In a rather convoluted argument before the trial court, plaintiff asserted that, because (1) the jury in the prior action determined that the traumatic brain injury she suffered following the accident exacerbated her preexisting dementia, and (2) Dr. Sewick recommended around-the-

clock attendant care for plaintiff in his April 2016 evaluation, the question whether plaintiff should receive—and defendant should pay for—future around-the-clock attendant care was definitively settled. We disagree.

Plaintiff's claims for attendant care benefits in the prior action were limited to the time period between June 22, 2015, when defendant ceased reimbursing plaintiff for attendant care services, and August 2017. The order of judgment in the prior action does not specify a different time period for which plaintiff was awarded reimbursement for attendant care services, and instead only indicates that plaintiff was awarded $38,495.50. Moreover, the modified verdict form that the jury completed in the prior action stated, in Question No. 2:

> Did the plaintiff's accidental bodily injury arise out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle on June 24, 2014 *during the period of June 22, 2015 to current?*

The jury answered this question in the affirmative. Thus, plaintiff's contention that her entitlement to around-the-clock attendant care was conclusively determined in the prior action does not find support in the record. Although the jury did find in Question 1(B) of the verdict form that plaintiff's automobile accident caused "an aggravation and/or exacerbation of dementia," neither the verdict form nor the order of judgment says anything about plaintiff requiring or being awarded future around-the-clock attendant care benefits.

Additionally, plaintiff submitted to defendant attendant care forms for the periods of June 2015, August to December 2015, January to December 2016, January to March 2017, August to December 2017, and February 2018. It was not until November 27, 2017, after the verdict was rendered in the prior action, that plaintiff began to request reimbursement for around-the-clock attendant care. Contrary to plaintiff's claim, there is no basis for concluding that her entitlement to reimbursement for around-the-clock attendant care was settled in the first action.

Moreover, defendant asserts, as it did in the trial court, that the doctrine of res judicata instead operates to bar plaintiff's claims in the instant case because plaintiff should have raised her claim for declaratory relief regarding around-the-clock attendant care in the prior action, and with this, we agree. A review of plaintiff's complaints in both this case and LC No. 15-005400-NF reveals that both cases arise from the same transaction (i.e., the June 24, 2014 motor vehicle accident). Indeed, Count III in the complaint in the prior action and Count II in the complaint in the present case are substantially identical. Both cases seek recovery of PIP benefits from defendant for attendant care that plaintiff claims is reasonably necessary because of her dementia, which she contends was aggravated or exacerbated by the motor vehicle accident. There is no apparent reason why plaintiff's claim for recovery of around-the-clock attendant care in this case could not have been brought in the prior action, which also sought recovery of PIP attendant care benefits related to plaintiff's dementia. It appears that for strategic reasons, plaintiff (1) filed this action and the prior action separately, and (2) waited for a favorable jury determination in the prior action concerning whether the accident contributed to her preexisting dementia before proceeding in this case to request a declaratory judgment that she is now entitled to around-the-clock attendant care. Such gamesmanship directly contravenes the purpose underlying the doctrine of res judicata, which is to "prevent multiple suits litigating the same cause of action." *Adair*, 470 Mich at 121.

Additionally, plaintiff's pursuit of two separate actions also violates the compulsory joinder rule of MCR 2.203(A), which provides:

> In a pleading that states a claim against an opposing party, the pleader must join every claim that the pleader has against that opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

Exercising reasonable diligence, *Adair*, 470 Mich at 121, plaintiff could have presented her claim seeking declaratory relief with respect to the need for around-the-clock attendant care in the prior action. While plaintiff claimed in the trial court that, "[a]t the time of trial in the prior case, [p]laintiff's family members were not able to provide [her] with the 24/7 care she required per Dr. Sewick[,]" the unavailability of plaintiff's family members was not determinative of plaintiff's need for around-the-clock care, and thus did not preclude plaintiff from raising her claim for declaratory relief with respect to her need for around-the-clock care.

For these reasons, we reverse the trial court's order granting summary disposition in favor of plaintiff on the basis of res judicata, and we remand this case to the trial court for entry of an order granting summary disposition in favor of defendant under MCR 2.116(I)(2). Given our disposition of this issue, we need not address defendant's remaining arguments on appeal.

Reversed and remanded for entry of an order of summary disposition in favor of defendant. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra