# Court of Appeals, State of Michigan

## ORDER

Pandemonium Inc v Northcrest Development LLC

Docket No.    350526

LC No.        18-012741-CB

Amy Ronayne Krause
Presiding Judge

Michael J. Riordan

Colleen A. O'Brien
Judges

The motion for reconsideration is GRANTED, and this Court's opinion issued June 3, 2021, is hereby VACATED.  A new opinion is attached to this order.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

July 22, 2021
Date

_____
Chief Clerk

*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PANDEMONIUM, INC., and ASTRAL SPACE, LLC,

Plaintiffs-Appellants/Cross-Appellees,

v

NORTHCREST DEVELOPMENT, LLC, and CHAD T. MCCORMICK,

Defendants-Appellees/Cross-Appellants,

and

KEHRIG STEEL, INC., CHIMNEY CRICKET, INC., GREGORY A. SARKISIAN, doing business as SARK & ASSOCIATES, FORESTA ARCHITECTS, LLC, and BRIAN FORESTA,

Defendants-Appellees.

UNPUBLISHED
July 22, 2021

No. 350526
Wayne Circuit Court
LC No. 18-012741-CB

ON RECONSIDERATION

Before: RONAYNE KRAUSE, P.J., and RIORDAN and O'BRIEN, JJ.

PER CURIAM.

Plaintiffs, Pandemonium, Inc. and Astral Space, LLC. appeal by right from the trial court's dismissal of their claims under MCR 2.116(C)(7), finding them barred by res judicata. Defendants

-1-

Northcrest Development, LLC. (Northcrest) and Chad T. McCormick[1] cross-appeal the trial court's denial of their motion for offer-of-judgment sanctions under MCR 2.405. We affirm.

## I. BACKGROUND

Plaintiff Astral is the owner, and plaintiff Pandemonium is the operator, of a commercial building. In 2014, Pandemonium retained Northcrest as the general contractor for a remodeling project of that building. The remaining defendants, Kehrig Steel, Inc. (Kehrig); Chimney Cricket, Inc. (Chimney Cricket); Gregory A. Sarkisian doing business as Sark & Associates (Sarkasian); and Foresta Architects, which is owned by Brian Foresta (collectively Foresta), were all subcontractors hired by Northcrest to work on the project. The project was completed in 2015. That same year, Northcrest brought an action against plaintiffs arising out of a dispute over Northcrest's payment and lien. Plaintiffs counterclaimed against Northcrest, alleging various construction and design defects in the remodeling work. That action was settled in 2016 pursuant to a stipulation and release, and all claims were dismissed with prejudice.

According to plaintiffs' complaint, "on or about February 23, 2018," part of the roof of plaintiffs' building collapsed. Plaintiffs then retained forensic engineers, who completed a report (the "Nederveld Report") on March 30, 2018. According to the Nederveld Report, which plaintiffs attached to their complaint,[2] the roof collapse was due to negligent design and construction during the remodeling. The Nederveld report also noted multiple other design deficiencies. The report noted, *inter alia*, that a considerable number of structural problems were revealed when drywall and concrete were cut open. However, it also noted that "[b]eginning in December 2017, drywall deformation and tearing of paint was observed on soffit framing located at one of the newly added steel support beams." Furthermore, the "original engineer," apparently Sarkisian, subsequently returned to the site and observed several problems, including an improperly long beam span, no grouting on masonry pillars, and no footing below a masonry pillar, upon "a visual inspection." The Nederveld Report concluded that one of the four "independent[] or collective[]" causes of the collapse was an improperly long beam span, although an excess beam span was also cited as an additional deficiency unrelated to the collapse.

Plaintiffs commenced this action on September 27, 2018. Plaintiffs alleged that the roof collapse was caused by, among other things, construction and design defects related to the 2014-

---

[1] McCormick is the owner of Northcrest. For purposes of this appeal, we will refer to Northcrest and McCormick jointly as "Northcrest" except where specifically necessary to distinguish them.

[2] Northcrest contends that the Nederveld Report is inadmissible hearsay that should not have been considered pursuant to MCR 2.116(G)(6). However, evidence may properly be considered for summary disposition purposes if it could be "plausibly admissible" in substance, or if a proper foundation were to be laid. *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 526; 773 NW2d 57 (2009). We are unpersuaded that Northcrest's bald and unsupported assertion that the Nederveld Report is hearsay warrants further consideration of the issue. *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

2015 remodeling project, including improper architectural design, improper engineering design, improper demolition of the prior roof support system, and improper construction of the roof.

Northcrest moved for summary disposition, arguing that all of plaintiffs' claims should be dismissed on the basis of res judicata because they involved alleged construction and design defects that should have been brought in the 2015 case, in which all claims were dismissed with prejudice. The trial court agreed and granted Northcrest's motion for summary disposition under MCR 2.116(C)(7). The other defendant-subcontractors also later moved for summary disposition on the basis of res judicata.[3] Although the subcontractors were not parties to the 2015 action, the trial court agreed that they were in privity with Northcrest, and therefore, they too were entitled to summary disposition on the basis of res judicata. Northcrest also filed a motion for sanctions under the offer-of-judgment rule, MCR 2.405. Although the trial court agreed that Northcrest was eligible for an award of actual costs under the rule, the trial court declined to award an attorney fee in the interest of justice, MCR 2.405(D)(3). Plaintiffs now appeal the trial court's grants of summary disposition in favor of the various defendants, and Northcrest cross-appeals the trial court's denial of sanctions.

## II. STANDARD OF REVIEW

This Court reviews a trial court's summary disposition decision de novo. *Spiek v Dep't of Transp,* 456 Mich 331, 337; 572 NW2d 201 (1998). Under MCR 2.116(C)(7), where the claim is allegedly barred, the trial court must accept as true the contents of the complaint, unless they are contradicted by documentary evidence submitted by the moving party. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "The applicability of res judicata is a legal question that this Court reviews de novo." *Bergeron v Busch*, 228 Mich App 618, 620; 579 NW2d 124 (1998).

## III. RES JUDICATA AS TO NORTHCREST

Plaintiffs argue that the trial court erred by ruling that res judicata applies to bar their claims in this action. Plaintiffs contend that this action is not barred by res judicata because their claims related to the 2018 partial roof collapse could not have been discovered through the exercise of reasonable diligence at the time of the 2015 lawsuit, and therefore, the claims are not barred by res judicata. We disagree.

### A. PRINCIPLES OF LAW

The doctrine of res judicata "serves a two-fold purpose: to ensure the finality of judgments and to prevent repetitive litigation." *Bergeron*, 228 Mich App at 621. The doctrine serves to bar a subsequent action if "(1) the first action was decided on the merits, (2) the matter contested in

---

[3] The professional defendants, Sarkisian and Foresta, also moved for summary disposition on the independent ground that the claims against them were barred by the two-year statutory limitations period for professional malpractice claims. The trial court entertained the parties' arguments as to that defense, but insofar as we can determine from the hearing transcript, did not clearly rule on that defense, presumably because its res judicata ruling rendered the limitations period defense moot.

the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999). The doctrine is broadly applied, and it therefore bars "not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id*. Although it may be relevant to consider whether the two cases depend on proving the same evidence, Michigan employs a transactional test, so a differing constellation of evidence is not dispositive. See *Adair v Michigan*, 470 Mich 105, 123-125; 680 NW2d 386 (2004). "The 'transactional' test provides that the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." *Id*. at 124 (quotation omitted). The analysis is a pragmatic one, and it considers not only the relationships among the facts, but whether they would "form a convenient trial unit." *Id*. at 125 (quotation omitted).

## B. APPLICATION

In the 2015 action, Northcrest alone initially sued both plaintiffs, along with other parties, and plaintiffs filed a counterclaim against both Northcrest and McCormick. The counterclaim, which listed both plaintiffs as parties,[4] alleged construction and design deficiencies in the same remodeling work, as well as efforts by Northcrest to conceal its incomplete or defective work. Among more specific allegations, plaintiffs contended that Northcrest failed to complete all of the work specified in the parties' contract, failed to perform work that conformed to the contract's specifications, fraudulently or otherwise misrepresented the completeness of their work, affirmatively attempted to conceal defects in the work, and instructed subcontractors to perform substandard work. Plaintiffs further alleged that "[a]s a result of Northcrest and McCormick's breach of contract, fraud and misrepresentation, Pandemonium has suffered damages resulting from work [that] was not done, not done correctly or completed in a non-conforming or defective manner."

There can be no serious dispute that the claims in this case and the counterclaim in the 2015 case arise out of the same transaction. Pragmatically, both cases allege that Northcrest improperly, and either incompetently or maliciously or both, rendered an extensive array of deficient and defective work in the same role as general contractor on the same remodeling project, causing plaintiff to incur substantial costs to repair and remediate. We accept at face value, without deciding, that plaintiffs did not actually know in 2015 or 2016 that the roof would later collapse as a result of the same defective work. However, the question is whether the defective work that caused the 2018 roof collapse could have been raised in the prior counterclaim by "exercising reasonable diligence." *Dart*, 460 Mich at 586.

It is both established and logical that if new facts develop after a prior final judgment was entered, those new facts could not have been discovered by any exercise of reasonable diligence. See *In re Bibi Guardianship*, 315 Mich App 323, 333-335; 890 NW2d 387 (2016); *In re Pardee*,

---

[4] Plaintiffs contend that Astral was not a party to the design defect claims brought in the counterclaim. The counterclaim lists both Pandemonium and Astral as "Counter-Plaintiffs," and in the "defective construction" count states that "Counter-Plaintiffs," i.e., plural, suffered damages due to Northcrest's alleged defective work and design.

190 Mich App 243, 247-250; 475 NW2d 870 (1991). Conversely, however, res judicata will bar a subsequent action if facts already in existence could have been discovered through reasonable diligence, which may include conducting a further investigation, irrespective of whether the plaintiff had actual knowledge of those facts. *Perry & Derrick Co v King*, 24 Mich App 616, 619-620; 180 NW2d 483 (1970). In other words, the facts themselves must be new to preclude application of res judicata, not merely newly discovered unless their discovery was not reasonably possible at the time. See *South Macomb Disposal Auth v American Ins Co*, 243 Mich App 647, 655-656; 625 NW2d 40 (2000).

Clearly, the roof had not collapsed in 2015 and 2016. Equally clearly, the poor workmanship that allegedly caused the roof to collapse *had* already occurred by 2016. Therefore, the pertinent facts did exist at the time of the prior counterclaim. Even if plaintiff was unaware of the specific defective workmanship, plaintiff unambiguously was aware that there *was* defective workmanship. What constitutes reasonable diligence must be considered in light of that circumstance. Plaintiffs contend that the specific defective workmanship at issue could not have been discovered without cutting open drywall and drilling into the concrete floor, both of which went beyond a reasonable degree of investigation or inspection, especially considering that the building had passed a city official's inspection. We disagree.

As noted above, the Nederveld Report seemingly indicated that some of the problems that contributed to the 2018 roof collapse were visibly apparent upon a cursory inspection. To the extent the report is unclear whether the visibly apparent problems did themselves contribute to the roof collapse, the report clearly indicates that the visual inspection induced the more invasive inspection work. Considering the sheer extent of the defects in Northcrest's work already known to plaintiffs, and the alleged fact that Northcrest had actively covered up its shoddy workmanship, in conjunction with the Nederveld Report, we agree with the trial court that a reasonable exercise of diligence by plaintiffs in 2015 and 2016 would have revealed the additional defects that caused the roof collapse in 2018.

The trial court also correctly observed that the time damages are sustained is not necessarily dispositive. We agree with plaintiffs that in 2015 and 2016, it may have been speculative whether Northcrest's defective work would have specifically resulted in a partial roof collapse, or indeed any particular eventual consequence. However, this misses the point. If plaintiffs had diligently conducted an investigation and pursued claims related to the then-existing structural defects, those defects could have been remediated at the time, thereby preventing the roof from later collapsing. In any event, the fact that repairs post-collapse are probably more expensive than preventative remediation would have been pre-collapse does not alter whether the wrongful conduct by Northcrest could or should have been discovered previously. There is no evidence that the roof collapse was caused by any additional work performed after 2015.

Accordingly, the trial court did not err by ruling that res judicata barred plaintiffs' claims in this action. Further, because the counterclaim against Northcrest and McCormick in the 2015 litigation was filed by both plaintiffs, there is no merit to plaintiffs' argument that the trial court's res judicata ruling should not apply to Astral.

Plaintiffs also argue that the trial court erred by dismissing their claims in this case because the settlement agreement and release that the parties executed in the 2015 action did not explicitly

-5-

state that it applied to future claims. However, the scope of the 2015 release has no bearing on the application of res judicata. As explained, res judicata applies to claims that could have been raised in a prior action, but were not. This broad application of res judicata does not depend on whether the parties to a prior action executed a release of any claims. Although res judicata requires that the prior action be decided on the merits, there is no requirement that a release of claims must exist in the first action and that it must address any claims that could have been raised but were not. Accordingly, it is unnecessary to determine the scope of the release in the 2015 action because that release has no impact on the application of res judicata in this case.

## IV. RES JUDICATA AS TO SUBCONTRACTORS

Plaintiffs also argue that even if res judicata applies to bar their claims against Northcrest, it should not apply to bar their claims against the subcontractors because they were not parties to the 2015 action. We disagree.

Although it is undisputed that that the subcontractors were not parties to the 2015 action, res judicata applies when both of the "actions involve the same parties *or their privies*." *Dart*, 460 Mich at 586 (emphasis added). "To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Adair*, 470 Mich at 122. "The outer limit of the doctrine traditionally requires both a 'substantial identity of interests' and a 'working functional relationship' in which the interests of the nonparty are presented and protected by the party in the litigation." *Id*. (quotations omitted).

Because all of the subcontractors were hired by Northcrest and plaintiffs sued Northcrest for alleged construction defects in the 2015 action, we agree with the trial court that Northcrest and its subcontractors were in privity in that case. The subcontractors, having been hired by Northcrest to perform work related to the remodeling project, had a working functional relationship with Northcrest. Further, Northcrest was in a position to protect both its interests and the subcontractors' interests in defending against plaintiffs' counterclaims for construction and design defects.

Plaintiffs contend that privity was lacking because the subcontractors had been paid for their work on this project by Northcrest before the 2015 action was filed, which plaintiffs appear to claim severed any interests the subcontractors may have with regard to plaintiffs' claims in the 2015 case. We disagree. Whether the subcontractors had been paid had no bearing on whether their work was done properly or improperly. Furthermore, the payments made to the subcontractors had no impact on the alignment of their interests with Northcrest's interest in defending against plaintiffs' counterclaims alleging construction and design defects. Therefore, the trial court did not err by holding that the subcontractors were in privity with Northcrest in the 2015 action, and accordingly, res judicata applied to also bar plaintiffs' claims against the subcontractors.

Plaintiffs also complain that defendants did not separately address plaintiffs' claims for gross negligence, wanton misconduct, and ordinary negligence. We disagree. As explained, res judicata is broadly applied to include not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. *Dart*, 460 Mich at 586. Because plaintiffs' claims for ordinary negligence, gross

negligence, and wanton misconduct arose from the same transaction at issue in the 2015 litigation, and plaintiffs could have raised those claims in that action, res judicata applies to bar them in this action, and defendants were not required to address those claims individually. We affirm the trial court's orders dismissing plaintiffs' claims against defendants on the basis of res judicata.

## V. STATUTE OF LIMITATIONS AS TO SARKISIAN AND FORESTA

Plaintiffs argue that the trial court erred by ruling that plaintiffs' claims against Sarkisian and Foresta Architects were subject to a two-year limitations period applicable to professional malpractice claims, MCL 600.5805(8) and (13), rather than the six-year limitations period in MCL 600.5839(1)(a); or, alternatively, that the claims were preserved by application of the six-month discovery rule under MCL 600.838(2). However, because all claims against Sarkisian and Foresta Architects were subject to the trial court's ruling on res judicata, which we have affirmed, it is not necessary to address this issue.

## VI. SANCTIONS UNDER MCR 2.405(D)

In their cross-appeal, Northcrest argues that the trial court erred by applying the interest-of-justice exception to deny its motion for sanctions under the offer-of-judgment rule, MCR 2.405(D). We disagree.

## A. PRINCIPLES OF LAW

"Under MCR 2.405, the offer of judgment rule, a party may serve on his or her opponent a written offer to stipulate the entry of a judgment." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 297; 769 NW2d 234 (2009). In general, if the opposing party rejects or fails to accept the offer, and the offering party receives a verdict or judgment more favorable than the average of any offers made, the offering party is entitled to recover actual costs from the offeree. *Id*. However, pursuant to MCR 2.405(D)(3), the trial court "may, in the interest of justice, refuse to award an attorney fee under this rule." We review de novo the trial court's interpretation and application of the court rule as a matter of law, and we review for an abuse of discretion the trial court's decision to invoke the interest of justice exception. *Simcor Constr, Inc v Trupp*, 322 Mich App 508, 514; 912 NW2d 216 (2018). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008).

## B. APPLICATION

In November 2018, Northcrest and McCormick made offers of judgment to plaintiffs. McCormick offered $2,000 to Pandemonium and Northcrest offered $7,000 to Pandemonium, and McCormick and Northcrest each offered $500 to Astral.[5] Plaintiffs did not accept the offers. After the trial court granted McCormick and Northcrest's motion for summary disposition, the two

---

[5] In its combined brief on appeal, Northcrest contends that it offered $7,000 each to Pandemonium and Astral, and McCormick offered $500 each to Pandemonium and Astral. This does not match the offers we found filed in the lower court record.

-7-

defendants filed a motion for sanctions under MCR 2.405(A)(6) and (B)(3), and requested attorney fees of $18,664.50. The trial court agreed that defendants were eligible for an award of attorney fees under the rule, but after requesting supplemental briefing by the parties, it declined to award attorney fees in the interest of justice. On appeal, Northcrest and McCormick expressly decline to challenge the trial court's ruling that a reasonable hourly rate would be less than the rate originally requested. Similarly, although plaintiffs maintain that summary disposition should not have been granted in defendants' favor in the first place, they concede that under the present procedural posture of this matter, they "rely solely on the 'interest of justice' exception in MCR 2.405(D)(3) to avoid the imposition of attorney fees following their rejection of the offer to stipulate to entry of judgment."

The purpose of the rule is to encourage parties to settle before trial and to discourage protracted litigation. See *Sanders v Monical Machinery Co*, 163 Mich App 689, 691-693; 415 NW2d 276 (1987). Although the trial court has the discretion to deny an award in the "interest of justice," doing so is generally only proper under exceptional circumstances where the purpose of the rule has been frustrated. *Hamilton v Becker Orthopedic Appliance Co*, 214 Mich App 593, 596-597; 543 NW2d 60 (1995). Alternatively, the "interest of justice" exception might properly apply where there is some overriding "public interest in having an issue judicially decided rather than merely settled by the parties." See *Luidens v 63rd Dist Court*, 219 Mich App 24, 35-36; 555 NW2d 709 (1996). The "interest of justice" exception does not apply merely because a party's rejection of an offer was reasonable, but may apply if the offer was *de minimus* or made for a purpose other than a good-faith effort to negotiate. *Id*. at 34-35.

It is apparent that Northcrest and McCormick realized, before ever filing an answer, that regardless of their role in the cause of the roof collapse, they had grounds for dismissal of all of plaintiffs' claims on the basis of res judicata. Northcrest and McCormick filed their motion for summary disposition in lieu of filing an answer on November 21, 2018. They made their offers of judgment just five days later on November 26, 2018. The trial court granted summary disposition for Northcrest and McCormick in March 2019. The trial court's bench ruling regarding the offer of judgment motion is somewhat difficult to follow. The trial court indicated that it did not believe Northcrest and McCormick were engaging in "gamesmanship in its purest sense." However, fair reading of the trial court's commentary as a whole suggests that it was unimpressed by their relatively paltry offers in the face of plaintiffs' enormous losses that were blatantly caused by defendants' misconduct.

The "interest of justice" exception must be considered pursuant to the public policy favoring settlement of claims, rather than more abstract notions of what constitutes a "just" outcome. *Hamilton*, 214 Mich App at 96-597. Likewise, the frivolousness or non-frivolousness of a party's position "are too common to fit within the 'interest of justice' exception." *Luidens*, 219 Mich App at 34-35. Therefore, Northcrest's actual fault for the 2018 roof collapse is not a direct justification for invocation of the "interest of justice" exception. This Court has held that it is inappropriate for a trial court to consider the substantive merits of a party's claim when deciding whether to refuse offer-of-judgment sanctions in the interest of justice. *Nostrant v Chez Ami, Inc*, 207 Mich App 334, 337, 341; 525 NW2d 470 (1994). However, although the exception may not be invoked merely because a party's rejection of an offer was "reasonable under the circumstances," this Court has implied that an "excessive financial hardship" upon the rejecting party may have some small amount of relevance. See *Haliw v City of Sterling Heights*, 256 Mich

App 444, 450; 702 NW2d 637 (2005). We do not think it was improper for the trial court to consider the substance of the matter, without necessarily reaching a conclusion as to its merits, to help guide the court's assessment of whether an offer was sincere or a good-faith effort at negotiation.

On balance, we conclude that the trial court's invocation of the "interest of justice" exception did not fall outside the range of principled outcomes, especially considering the trial court's superior ability to observe the demeanor and conduct of the attorneys. See *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881). The trial court could have reasonably concluded that Northcrest and McCormick's combined offer of $10,000, when the estimated cost to repair the damaged roof exceeded several hundred thousand dollars, was not a sincere effort to settle the case. Additionally, given the strength of Northcrest's position regarding res judicata and the timing of the offers of judgment, we do not think it unwarranted to conclude that Northcrest had simply "tacked on" a paltry offer of judgment for the sole purpose of eventually recovering attorney fees rather than out of a sincere interest in settling the matter. We would not find the excessive financial hardship to plaintiffs to be justification for invocation of the "interest of justice" exception standing alone. However, we are not persuaded that it was an unreasonable supplemental consideration by the trial court to help it assess whether the offers of judgment were intended in good faith or to effectively convert a grant of summary disposition into a financial recovery.

Considering all the circumstances of this case and context of the history between the parties,[6] the trial court did not abuse its discretion by determining that this was an unusual case that justified application of the interest-of-justice exception to refuse to award attorney fees under MCR 2.405(D). As our dissenting colleague's thoughtful analysis reflects, the trial court would not have abused its discretion by refusing to invoke the "interest of justice" exception. However, we think this issue depends in part on the trial court's ability to assess the credibilities and demeanors of the attorneys, which is entitled to deference even where this Court's standard of review would otherwise be de novo. *In re Loyd*, 424 Mich 514, 535; 384 NW2d 9 (1986). The abuse of discretion standard expects that there may be a "*range* of reasonable and principled outcomes," *Smith*, 481 Mich at 526 (emphasis added), necessarily implying that there may not be a single correct outcome. We are not persuaded that there *is* a single correct outcome here. The question is whether *these* offers of judgment were made in good faith, which, under the circumstances and on the available record, we conclude is too close a question to find an abuse of discretion.

Affirmed. We direct that plaintiffs, Northcrest, and McCormick shall bear their own costs; the remaining defendants may tax costs. MCR 7.219(A).

/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien

---

[6] We note that the same trial judge presided over the 2015 action, although Northcrest appears to have been represented by different counsel at that time.