*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MURRAY D. WIKOL,

Plaintiff-Appellant,

v

SELECT COMMERCIAL ASSETS, LLC, SIS
HOLDINGS, LLC, DR. SAMIR AL-HADIDI, H.
GAYAR FAMILY, LLC, and DR. HESHAM
GAYAR,

Defendants-Appellees.

UNPUBLISHED
September 15, 2022

No. 355393
Oakland Circuit Court
LC No. 2020-183193-CB

Before: SWARTZLE, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

Plaintiff Murray D. Wikol appeals the trial court's order denying his motion to vacate or modify an arbitrator's decision to dismiss plaintiff's arbitration claims against defendants Select Commercial Assets, LLC (SCA), SIS Holdings, LLC (SIS), Dr. Samir Al-Hadidi, H. Gayar Family, LLC (HGF), and Dr. Hesham Gayar, on the basis of collateral estoppel and res judicata. We affirm.

## I. BACKGROUND

This case arises out of a dispute involving the management of SCA and the distribution of its assets. SCA is a real estate company specializing in purchasing, managing, and developing distressed real property. Plaintiff is a minority member of SCA and is on its Board of Managers. HGF and SIS are limited-liability companies, owned by Drs. Gayar and Al-Hadidi, respectively. HGF and SIS are the majority members of SCA and Dr. Gayar and Dr. Al-Hadidi are on SCA's Board of Managers. James Porritt was a minority member of SCA who initiated a separate arbitration proceeding (the Porritt arbitration) and obtained an order that divested him of the company and included a buy-out totaling $800,000. Plaintiff and defendants were respondents to the Porritt arbitration. Shortly before the hearing to resolve the issues in the Porritt arbitration, plaintiff filed a crossclaim alleging acts of minority oppression by defendants. The arbitrator

-1-

dismissed this claim without prejudice, concluding it was prejudicial to defendants to force them to defend a claim for which there was little time for discovery.

Later, in November 2018, plaintiff initiated this arbitration proceeding alleging that defendants had engaged in shareholder oppression, wrongful withholding of distributions, and various other acts of misconduct contrary to plaintiff's interests (the "November 2018 demand for arbitration"). Defendants moved to dismiss plaintiff's case under the doctrines of res judicata and collateral estoppel because plaintiff's claims had already been decided in the related Porritt arbitration, to which plaintiff was a party. The arbitrator granted defendants' motion to dismiss, but permitted plaintiff to file an amended arbitration demand and statement of claim to assert facts or claims that were not part of the Porritt arbitration.

In June 2019, plaintiff filed an amended demand for arbitration and statement of claim that restated the same claims previously dismissed by the arbitrator, but also added three new claims against defendants (the "June 2019 amended demand for arbitration"). Defendants again moved to dismiss plaintiff's case because plaintiff had raised the same claims already resolved in the Porritt arbitration. However, defendants acknowledged Paragraphs 89 and 90 of plaintiff's June 2019 amended demand for arbitration also alleged some new facts.

Around this time, plaintiff filed, without the arbitrator's knowledge, three related cases (collectively, "the Oakland Circuit Court cases") which also asserted claims against defendants. Two of the Oakland Circuit Court cases involved claims by plaintiff's companies, ProVisions, LLC (ProVisions), and Wimbleton Management and Services, LLC (Wimbleton). In the third case, plaintiff filed suit in his individual capacity against Alga Properties, LLC (Alga), a company owned by Dr. Al-Hadidi and Dr. Gayar.

The arbitrator in this case ultimately granted defendants' motion to dismiss plaintiff's June 2019 amended demand for arbitration with prejudice. The arbitrator granted the motion to dismiss, in part, because some of plaintiff's claims were "identical claims to those filed and ruled upon in the Porritt [arbitration]" and "they cannot be re-litigated in this proceeding under the doctrines of collateral estoppel and res judicata." In terms of plaintiff's claims in Paragraphs 89 and 90, which involved Alga, ProVisions, and Wimbleton, the arbitrator concluded these same claims were resolved in the Oakland Circuit Court cases. Therefore, these claims were "extinguished" and could not be relitigated in arbitration.

Plaintiff later filed a complaint in the trial court, and moved to vacate or modify the arbitration award. Plaintiff argued that under MCR 3.602(J) and MCL 691.1703(1)(c), the arbitrator refused to hear material evidence and conducted the arbitration in a manner that substantially prejudiced plaintiff's rights. Specifically, plaintiff alleged that the arbitrator did not allow him to present evidence of his damages. Plaintiff further alleged that the arbitrator misapplied the principles of res judicata and collateral estoppel in dismissing plaintiff's claims, which substantially prejudiced plaintiff's right to a hearing and due process. After a hearing, the trial court denied plaintiff's motion. This appeal followed.

## II. DISMISSAL OF THE ARBITRATION

Plaintiff raises several challenges to the arbitrator's decision to dismiss the arbitration, and argues that the trial court erred by denying his motion to vacate or modify the arbitration award. This argument can be separated into two general parts. Plaintiff first challenges the arbitrator's conclusion the allegations in Paragraphs 89 and 90 of the June 2019 amended demand for arbitration were barred on the basis of res judicata and collateral estoppel. Second, plaintiff disputes the arbitrator's determination the remaining allegations were also barred by res judicata and collateral estoppel. We disagree.

### A. STANDARD OF REVIEW

"This Court reviews de novo a trial court's ruling on a motion to vacate or modify an arbitration award." *Washington v Washington*, 283 Mich App 667, 671; 770 NW2d 908 (2009). "This means that we review the legal issues presented without extending any deference to the trial court." *Id*. "Whether an arbitrator exceeded [their] authority is also reviewed de novo." *Id*. at 672.

To the extent that plaintiff alleges a violation of his right to due process, whether a party has been afforded due process is a question of law subject to de novo review. *AFP Specialties, Inc v Vereyken*, 303 Mich App 497, 504; 844 NW2d 470 (2014). The application of collateral estoppel and res judicata are also questions of law that this Court reviews de novo. *Dep't of Environmental Quality v Sancrant*, 337 Mich App 696, 707; 976 NW2d 874 (2021).

### B. GOVERNING LAW

Courts have limited review over an arbitrator's decision. *TSP Servs, Inc v Nat'l-Std, LLC*, 329 Mich App 615, 619; 944 NW2d 148 (2019). "A court may not review an arbitrator's factual findings or decision on the merits." *Id*. at 620 (quotation marks and citation omitted). Rather, a court may only reverse an arbitrator's decision where the arbitrator made an error law. *Id*.

MCL 691.1703, which articulates when a court must vacate an arbitration award, states in pertinent part:

> (1) On motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if any of the following apply:
>
> * * *
>
> (c) An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, *refused to consider evidence material to the controversy*, or otherwise conducted the hearing contrary to [MCL 691.1695], so as to prejudice substantially the rights of a party to the arbitration proceeding.
>
> (d) *An arbitrator exceeded the arbitrator's powers*. [Emphasis added.]

"Arbitrators exceed their power when they act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law." *Saveski v Tiseo Architects, Inc*, 261 Mich App 553, 554; 682 NW2d 542 (2004) (quotation marks and citation omitted).

> Where it clearly appears on the face of the award or the reasons for the decision as stated, being substantially a part of the award, that the arbitrators through an error in law have been led to a wrong conclusion, and that, but for such error, a substantially different award must have been made, the award and decision will be set aside. [*DAIIE v Gavin*, 416 Mich 407, 443; 331 NW2d 418 (1982) (quotation marks and citation omitted).]

"Any such error must be readily apparent on the face of the award without second-guessing the arbitrator's thought processes, and the arbitrator's findings of fact." *Eppel v Eppel*, 322 Mich App 562, 572; 912 NW2d 584 (2018).

The arbitrator dismissed plaintiff's June 2019 amended demand for arbitration partially on the basis of collateral estoppel and res judicata.

> Generally, for collateral estoppel to apply three elements must be satisfied: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel. Mutuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action. In other words, the estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him. [*Sancrant*, 337 Mich App at 707-708; 976 NW2d 874 (2021) (quotation marks and citations omitted).]

With respect to res judicata, our Supreme Court has stated:

> The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. This Court has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. [*Adair v State*, 470 Mich 105, 121; 680 NW2d 386 (2004).]

The burden of establishing the applicability of res judicata is on the party asserting it. *Garrett v Washington*, 314 Mich App 436, 441; 886 NW2d 772 (2016).

To the extent that plaintiff also argues violations of his due process rights, this Court has observed "[d]ue process is a flexible concept, the essence of which requires fundamental fairness."

*Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009). Due process requires that a party be given notice of the proceeding and a meaningful opportunity to be heard. *Id*.

## C. PARAGRAPHS 89 AND 90

Plaintiff first argues the trial court erred by denying his motion to vacate or modify the arbitration award because the arbitrator dismissed the entire claim, though defendants only sought partial summary disposition of the claim. Plaintiff emphasizes Paragraphs 89 and 90 of the June 2019 amended demand for arbitration, arguing the events articulated in these paragraphs were not subject to res judicata or collateral estoppel because they involved events after the Porritt arbitration concluded. The allegations included plaintiff's assertion in Paragraph 89 that Dr. Al-Hadidi and Dr. Gayar "continued their pattern of willfully and intentionally engaging in conduct to harm [plaintiff] and SCA." This involved blocking plaintiff's access to financial information, tax documentation, disposing of real property without plaintiff's knowledge and consent, leveraging a "usurious loan" to plaintiff, and claiming that he had lost his managerial and membership interest in SCA. Similarly, in Paragraph 90, plaintiff contended the majority members of SCA would not provide him with information regarding "the material affairs" of SCA, had not paid him his management fee, reimbursed his expenses, or paid his real estate commission. Plaintiff also alleged, among other things, the majority members would not allow him and other minority members to vote on SCA business matters, and that the majority members withheld distributions from minority members and diverted SCA assets for non-SCA related projects, such as the Hunter House in Birmingham and the Troy Marriott, two projects in which defendants held an interest. In response to plaintiff's June 2019 amended demand for arbitration, defendants acknowledged these events were not subject to res judicata or collateral estoppel because the events happened after the Porritt arbitration concluded.

Although the parties agree that plaintiff's June 2019 amended demand for arbitration cited events allegedly occurring after the Porritt arbitration was resolved, we disagree with plaintiff's assertion the arbitrator contravened controlling principles of law by dismissing plaintiff's entire claim.[1] The substance of the claims at issue either were raised, or could have been raised, in the Oakland Circuit Court cases. For example, in the ProVisions lawsuit, ProVisions alleged the majority members of SCA transferred $6 million of SCA assets to the Alga accounts without approval. ProVisions also alleged Dr. Al-Hadidi and Dr. Gayar were using SCA assets to pay for non-SCA related expenses such as personal attorney fees and salaries of their family members, and to fund projects in which they had a personal interest. ProVisions further contended Dr. Al-Hadidi and Dr. Gayar "took away [plaintiff's] managerial access to SCA account information and failed to respond to requests to an accounting of funds transferred out of SCA to Alga and other third parties." More specifically, in Count VI of the ProVisions complaint, ProVisions alleged Dr. Al-Hadidi and Dr. Gayar used SCA as a conduit for their own personal interests and self-gain, and transferred funds from SCA to pay for nonrelated SCA ventures and matters without plaintiff's knowledge or consent.

---

[1] Plaintiff does not dispute the Oakland Circuit Court cases were decided on the merits, and that the same parties, or those in privity, were involved in the Oakland Circuit Court cases. *Adair*, 470 Mich at 121.

Likewise, in the Wimbleton lawsuit, Wimbleton alleged it provided services and payments to vendors on behalf of SCA to pay sales and lease commissions, and that it provided brokerage services to SCA and its members for the sale and lease of real estate, but that Wimbleton was not paid because SCA allegedly suffered cash-flow issues. According to Wimbleton, rather than paying Wimbleton what was owed, the majority members of SCA made unauthorized distributions of $6 million from SCA without plaintiff's knowledge and approval. Wimbleton also alleged SCA's majority members blocked plaintiff's managerial access to SCA's financial information and would not respond to requests for an accounting of the funds. Similarly, plaintiff contended that, rather than pay for Wimbleton's services, Dr. Al-Hadidi and Dr. Gayar used SCA as a conduit to further their own interests, and for their own self gain, and used the assets of SCA to pay for other liabilities that were not related to the business of SCA without plaintiff's knowledge.

In the Alga lawsuit, plaintiff alleged Dr. Al-Hadidi and Dr. Gayar, in their roles as the majority and controlling members of SCA, stopped making payments to ProVisions and Wimbleton for their services to SCA. This caused plaintiff to turn to Alga for a $100,000 loan, secured by a promissory note. Plaintiff stated he signed the promissory note under the impression that he would repay the loan from his equity interest in SCA. However, plaintiff later learned Dr. Al-Hadidi and Dr. Gayar had transferred approximately $6 million to Alga and were using SCA funds for their own personal purposes and for other business ventures such as the Hunter House and the Troy Marriott. These unauthorized distributions took place without plaintiff's knowledge or approval, and rather than taking money from plaintiff's ownership interest in SCA to repay the loan, Alga demanded repayment on the loan and obtained a default judgment against plaintiff.

Plaintiff claims the arbitrator erred as a matter of law because the arbitrator granted summary disposition on the entire claim even though defendants effectively admitted some of the allegations in the June 2019 amended demand for arbitration were not considered in the Porritt arbitration and, by implication, were ripe for consideration in the instant arbitration. However, this argument fails to account for the allegations in the Oakland Circuit Court cases. Except as further explained below, the arbitrator did not err by concluding that the claims plaintiff asserted in Paragraphs 89 and 90 of the June 2019 amended demand for arbitration were claims that either were raised or could have been raised in the Oakland Circuit Court cases. Therefore, plaintiff's claims were barred by res judicata following the dismissal of those actions with prejudice. However, as we explain, the arbitrator erred to the extent that he dismissed claims that were not fully resolved in the Alga lawsuit.

Plaintiff next argues, under the parties' arbitration agreement, the "SCA-specific" claims presented in the June 2019 amended demand for arbitration could only be resolved through arbitration. Therefore, the Oakland Circuit Court did not have jurisdiction to consider any "SCA-specific" claims. Because the Oakland Circuit Court lacked jurisdiction over "SCA-specific" claims, plaintiff contends the arbitrator erred in giving res judicata and collateral estoppel effect to the Oakland Circuit Court's orders.

But, it was *plaintiff*, either individually or in his representative capacity, who initiated the Oakland Circuit Court cases. With the exception of the Alga case, neither plaintiff nor defendants

-6-

ever challenged the Oakland Circuit Court's jurisdiction to adjudicate the claims.[2] Yet, even if we accept plaintiff's argument that the arbitration agreement required "SCA-specific" claims be adjudicated through arbitration, we see no error in the trial court's agreement that plaintiff's June 2019 amended demand for arbitration was barred by the Oakland Circuit Court orders of dismissal. By initiating suits involving "SCA-specific" issues, and not later objecting to the Oakland Circuit Court's jurisdiction over the issues, plaintiff forfeited any agreement to arbitrate these claims. See *Marshall Lasser, PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002), quoting *Dresselhouse v Chrysler Corp*, 177 Mich App 470, 477; 442 NW2d 705 (1989) ("A party is not allowed to assign as error on appeal something which his or her own counsel deemed proper at trial since to do so would permit the party to harbor error as an appellate parachute."); see also *Cofrode v Gartner*, 79 Mich 332, 340; 44 NW 623 (1890) ("[W]hatever doubts may exist in a case where the jurisdiction may be objected to, there ought to be none where the parties assent to it."). Thus, we decline to reverse on this basis.

We agree with plaintiff, however, the arbitrator erred by giving res judicata effect to claims raised in the Alga case that were subject to arbitration, but disagree this error necessitates our reversal of the arbitration award. The Oakland Circuit Court dismissed the Alga case except to "any of the issues currently before the private arbitration . . . including any issues regarding [plaintiff's] status as a manager/member of SCA." Despite this allowance by the circuit court, the arbitrator rejected plaintiff's June 2019 amended demand for arbitration, stating:

> *Subsequent to June 3, 2019, all three complaints filed in Oakland Circuit Court were fully and finally resolved. As such, those claims have been extinguished and can no longer be contested in this arbitration.* Additionally, the [arbitrator] has previously ruled that to the extent [plaintiff] had filed identical claims to those filed and ruled upon in the Porritt proceeding, they cannot be re-litigated in this proceeding under the doctrines of collateral estoppel and res judicata. [Emphasis added.]

The arbitrator erred as a matter of law by concluding that plaintiff's claims in the Alga lawsuit were "extinguished" and that those claims were "fully and finally resolved," because the order dismissing the Alga lawsuit expressly provides that the dismissal did not operate to bar plaintiff from pursuing his claims in arbitration, particularly those that addressed his status as a member and manager of SCA. Therefore, it is clear from the face of the arbitration award the arbitrator erred by holding that the Alga claims were previously resolved in the circuit court and were now barred by collateral estoppel or res judicata. *Eppel*, 322 Mich App at 566.

But, plaintiff must also demonstrate that, but for this error, a substantially different award would have been made. *DAIIE*, 416 Mich at 443. Although plaintiff asserts he was entitled to damages similar to those awarded to Porritt, plaintiff offers no evidence demonstrating the arbitrator would have made such an award. Moreover, even if we were to compare the two cases,

---

[2] In each of the complaints involving the Oakland Circuit Court cases, plaintiff, without further explanation, stated: "[A]rbitration may have jurisdiction over this matter." We do not view plaintiff's conjecture that arbitration "may" have jurisdiction as a specific "challenge" to the Oakland Circuit Court's jurisdiction.

it is unlikely plaintiff would receive an award similar to the Porritt arbitration because the purpose of the Porritt award was to break the voting deadlock that existed between SCA's majority and minority members. After Porritt's interest was bought out, the deadlock no longer existed. Therefore, reversal is not necessary because we cannot conclude on this record that, but for the error, a different award would have been made.

## D. REMAINING ALLEGATIONS

Plaintiff also contends that the arbitrator wrongly dismissed his remaining arbitration allegations. Plaintiff first raised the allegations at issue in his crossclaim filed during the Porritt arbitration. The arbitrator dismissed plaintiff's crossclaim without prejudice, stating Plaintiff's late-filed crossclaim was untimely and prejudicial. Plaintiff later raised the same issues in his November 2018 demand for arbitration. Again, the arbitrator dismissed these claims, this time because they were barred by res judicata and collateral estoppel. On appeal, plaintiff argues the arbitrator erred in dismissing these claims because (1) the dismissal without prejudice preserved his right to raise these same claims, and (2) the claims were not barred by res judicata and collateral estoppel.

We first address the effect of the arbitrator's dismissal of plaintiff's crossclaim without prejudice. Plaintiff contends that, by dismissing these claims on the basis of res judicata and collateral estoppel, the arbitrator transformed the dismissal without prejudice to a dismissal *with* prejudice. Plaintiff further argues that the dismissal without prejudice was, in effect, a nullity. We disagree.

Plaintiff conflates a procedural dismissal with a substantive dismissal. "A dismissal without prejudice is not an adjudication on the merits." *Yeo v State Farm Fire and Cas Ins Co*, 242 Mich App 483, 484; 618 NW2d 916 (2000). The effect of a dismissal without prejudice is simply a permission slip to a party, allowing them to refile the same allegations in a separate action. See, e.g., *Rinke v Auto Moulding Co*, 226 Mich App 432, 439; 573 NW2d 344 (1997). But this permission slip does not carry with it an adjudication that the doctrines of res judicata and collateral estoppel do not apply to the refiled claims. The arbitrator was required to permit plaintiff to refile his claims, nothing more. But a right to refile does not forfeit defendants' right to later argue that plaintiff's untimeliness in the Porritt arbitration barred some or all of his claims. Plaintiff simply overstates the effect of a dismissal without prejudice and reversal is therefore not warranted on this basis.

We next turn to the merits—specifically, whether plaintiff's remaining allegations were barred by res judicata and collateral estoppel. The arbitrator analyzed this issue by first noting that plaintiff was joined as a codefendant in the Porritt arbitration, "but did not file a claim or assert any rights in the Porritt action until 30 days prior to the scheduled hearing." Yet, "the [other] parties in the Porritt arbitration engaged in extensive discovery involving factual allegations in dispute and the extensive financial transactions engaged in by SCA . . . ." The arbitrator concluded that "to the extent [plaintiff] has filed identical claims to those filed and ruled upon in the Porritt proceeding, they cannot be re-litigated [sic] in this proceeding under the doctrines of collateral estoppel and res judicata."

We recognize that our review of an arbitration award is very limited.  Reversal is permitted only where there is an error on the face of the award or "arbitrators through an error in law have been led to a wrong conclusion, and that, but for such error, a substantially different award must have been made . . . ."  *DAIIE*, 416 Mich at 443.  We discern no such error in this case.  Plaintiff was a party to the Porritt arbitration.  In his role as a codefendant, he had an opportunity to raise any claims against the other parties.  And, to the extent that any of his present claims were "identical" to Porritt's claims, plaintiff had the opportunity to adjudicate those claims as a party to the Porritt arbitration.  The arbitrator examined the substance of plaintiff's claims and concluded that these claims could have been, or were, adjudicated in the Porritt arbitration.  The role of this Court is not to reexamine the claims and second-guess the arbitrator's assessment.  Thus, there is nothing on the face of the award or clear evidence demonstrating that the arbitrator made an error of law that warrants reversal.[3]

## III.  FAILURE TO CONSIDER MATERIAL EVIDENCE

Plaintiff also argues that the trial court erred by refusing to vacate the arbitration award because the arbitrator did not consider material evidence in rendering its decision.  We disagree.

In the revised final arbitration award in the Porritt arbitration, the arbitrator rejected plaintiff's and Porritt's claim that a dissolution of SCA was necessary because a management deadlock rendered it impracticable for SCA to carry on its business.  Instead, the arbitrator ordered SCA to redeem Porritt's equity and membership interest in the company to break a deadlock that prevented SCA from carrying on its daily business affairs, and the respondents were required to buy out Porritt's equity interest in the company for $800,000.  Thus, it appears that the arbitrator found that the parties' dispute had caused a management deadlock, but that the situation could be remedied by requiring the respondents to buy out Porritt's equity interest rather than dissolving the company.

The thrust of plaintiff's argument on appeal is that the arbitrator erred by not taking testimony from plaintiff in the instant arbitration case that would have established that the managing members of SCA were making unauthorized distributions from SCA assets, which plaintiff did not approve, and which caused a deadlock under the terms of the operating agreement.  As an initial matter, we note that in the Porritt arbitration, Porritt made similar allegations, namely that he had been "frozen . . . out" of the management and affairs of SCA, material financial information had been withheld from him, and that defendants were using SCA resources for their own self gain and benefit.  Specifically, Porritt alleged that without a member or manager vote, the respondents had made at least $3,000,000 in distributions from SCA.

---

[3] In his brief on appeal, plaintiff makes a cursory argument that he was deprived of due process.  Although he cites cases in support of this assertion, he does not explain how they apply to the facts of this case or otherwise support his legal argument.  When a party simply provides a cursory argument in support of their claim, this Court will consider the argument waived.  *Badiee v Brighton Area Sch*, 265 Mich App 343, 359; 695 NW2d 521 (2005).  This Court will not allow a party to simply announce its legal position and leave it to this Court to uncover and rationalize the basis for the claims at issue.  *Id*. at 360.

Moreover, in the Porritt arbitration award, the arbitrator clearly recognized that during the four-day hearing, the parties were able to present testimony in support of their respective positions. The arbitrator also acknowledged that plaintiff's counterclaim had been stricken, and therefore, a remedy under the counterclaim was not appropriate. In the present arbitration award, the arbitrator noted that Porritt's demand for arbitration was an "identical companion case," and that Porritt also alleged acts of oppression against himself as minority member. After Porritt's membership and equity interests were ordered to be bought out by the managing members of SCA, plaintiff advanced an unsuccessful argument that he should also receive a buyout, and the arbitrator rejected this argument. While plaintiff now claims that he was precluded from presenting material evidence regarding millions of dollars of unauthorized distributions made from SCA, there is no indication from the record that (1) the arbitrator refused to hear this evidence during the Porritt arbitration, MCL 691.1703(c), (2) the evidence was not already presented to the arbitrator in the four-day hearing in the Porritt arbitration, or (3) plaintiff could not have presented this evidence during the four-day hearing in the Porritt arbitration. Under the circumstances, we are not persuaded that the arbitrator erred by concluding that res judicata applied to plaintiff's like claim in the instant arbitration, and thus did not err by refusing to consider material evidence in contravention of MCL 691.1703(c).

Affirmed.

/s/ Brock A. Swartzle
/s/ Thomas C. Cameron
/s/ Sima G. Patel

-10-